**Electronically Filed
Supreme Court
SCWC-11-0000722
01-MAR-2016
11:57 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

DEBORAH J. WALTRIP, Petitioner/Claimant-Appellant,

vs.

TS ENTERPRISES, INC., DBA KIMO'S RESTAURANT, and FIREMAN'S FUND
INSURANCE COMPANY, Respondent/Employer/Insurance Carrier-
Appellee, and
SPECIAL COMPENSATION FUND, Respondent/Appellee.

_____

SCWC-11-0000722
CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000722; CASE NO. AB 2007-047(M) (7-02-00262))

MARCH 1, 2016

McKENNA, POLLACK, AND WILSON, JJ.,
WITH RECKTENWALD, C.J., CONCURRING IN THE RESULT,
WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This case arises from an accident suffered by

Petitioner/Claimant-Appellant, Deborah J. Waltrip ("Waltrip"),

while she worked for TS Enterprises, Inc., dba Kimo's Restaurant ("Restaurant"), on Maui.[1]  The Special Compensation Fund ("Fund") established under Hawai'i Revised Statutes ("HRS") § 386-151 (1993), is also an interested party.[2]  We accepted certiorari to address certain procedural issues implicated by Waltrip's pro se appeal.

In brief, Waltrip was not given an award by the Director of the Department of Labor and Industrial Relations ("DLIR") for certain aspects of her claimed injuries, and she appealed to the Labor and Industrial Relations Appeals Board ("LIRAB").  Following a hearing, LIRAB issued its Decision and Order ("July 2011 Decision").  Unsatisfied with LIRAB's decision, Waltrip, pro se, filed two separate motions, each of which was denied.  The first motion was titled, "Request to Reconsider" ("August Request").  The second motion was titled, "Request That the July 25th, 2011 Decision and Order Be Vacated and That the Labor and Industrial Relations Appeals Board Issue

---

[1] The term "Employer" is used to collectively refer to Restaurant and its workers' compensation carrier, Fireman's Fund Insurance Company.

[2] See HRS § 386-151 (a) (1993) ("There is hereby created a fund to be known as the special compensation fund which shall consist of payments made to it as provided by law. . . ."); HRS § 386-56 (1993) ("Where an injured employee or the employee's dependents fail to receive prompt and proper compensation and this default is caused through no fault of the employee, the director shall pay the full amount of all compensation awards and benefits from the special compensation fund to the employee or dependent.").

a New Notice of Initial Conference and Restart the Proceedings All Over Again Including New Discovery Deadlines and a Retrial of the Issues" ("September Request").  Waltrip appealed to the Intermediate Court of Appeals ("ICA").

Fund then filed a motion to dismiss Waltrip's appeal for lack of jurisdiction, arguing that her notice of appeal was untimely filed.  The ICA issued an "Order Granting in Part and Denying in Part Appellee Special Compensation Fund's May 3, 2012 Motion to Dismiss Appeal for Lack of Jurisdiction" ("Partial Dismissal Order") stating that Waltrip's notice of appeal was untimely as to LIRAB's July 2011 Decision, and was also untimely as to LIRAB's order denying the August Request.  See Waltrip v. TS Enters., No. CAAP-11-0000722, at 3 (App. May 31, 2012) (order).  As to Waltrip's appeal of LIRAB's order denying her September Request, the ICA concluded that "it appears that we might have appellate jurisdiction over [it]."  Id.  Accordingly, the ICA permitted the parties to proceed with briefing. Ultimately, the ICA found LIRAB lacked subject matter jurisdiction over Waltrip's September Request when it construed that request as a second motion for reconsideration over which the Board lacked statutory or regulatory authority to rule.  See Waltrip v. TS Enters., No. CAAP-11-0000722, at 2 (App. Aug. 28, 2014) (SDO).

The following timeline provides a sequence of major

events relevant to the procedural posture presented by this case:

9/18/2001 – Waltrip is injured at work

9/04/2002 – Waltrip files a workers' compensation claim

1/04/2007 – Director of DLIR issues a decision that awards Waltrip medical care, services, and supplies; temporary total disability benefits; partial disability benefits for her lumbar spine, psychological condition, and left leg; and $250 for disfigurement

1/23/2007 – Waltrip and Employer both timely appeal to LIRAB regarding the Director's January 4, 2007 decision

12/28/2007 – LIRAB temporarily remands the case to the Director for additional findings regarding the Employer's refusal to compensate for a referral and treatment plan

11/14/2008 – Director issues a supplemental decision determining that the referral and treatment plan were unnecessary

12/2/2008 – Waltrip timely appeals the Director's November 14, 2008 supplemental decision to LIRAB

10/12/2009, 7/19-7/21/2010 – LIRAB holds hearings

7/25/2011 – LIRAB issues its Decision and Order ("July 2011 Decision")

8/23/2011 – Waltrip files a "Request to Reconsider" ("August Request")

8/29/2011 - LIRAB issues an "Order Denying Claimant's Request to Reconsider" ("Order Denying August Request")

9/23/2011 – Waltrip files a "Request That the July 25th, 2011 Decision and Order Be Vacated and That [LIRAB] Issue a New Notice of Initial Conference and Restart the Proceedings All Over Again Including New Discovery Deadlines and a Retrial of the Issues" ("September Request")

9/28/2011 - LIRAB issues an "Order Denying Claimant's Motion to Vacate Decision of July 25, 2011" ("Order Denying September Request")

9/29/2011 – Waltrip files a notice of appeal from the July 2011 Decision and Order Denying August Request

10/28/2011 – Waltrip amends her notice of appeal and lists the July 2011 Decision and Order Denying September Request

4

as the subjects of her appeal

5/3/2012 – Fund files a "Motion to Dismiss the Appeal for Lack of Appellate Jurisdiction" ("Motion to Dismiss")

5/31/2012 - ICA issues "Order Granting in Part and Denying in Part Appellee Special Compensation Fund's May 3, 2012 Motion to Dismiss Appeal for Lack of Jurisdiction" ("Partial Dismissal Order")

8/28/2014 - ICA issues a Summary Disposition Order ("SDO") vacating the Order Denying September Request and remanding the case to LIRAB for the entry of an order dismissing the September Request for lack of jurisdiction

10/2/2014 - ICA issues its Judgment on Appeal

10/31/2014 – Waltrip files an Application for Writ of Certiorari ("Application")

Upon accepting certiorari, this court ordered supplemental briefing to address the following issues:

1.  Whether this court has jurisdiction under Hawai'i Revised Statutes (HRS) § 602-59(c) (Supp. 2013) to review the Intermediate Court of Appeals' May 31, 2012 "Order Granting in Part and Denying in Part Appellee Special Compensation Fund's May 3, 2012 Motion to Dismiss Appeal for Lack of Jurisdiction;"

2.  Whether the ICA gravely erred in the May 31, 2012 order by granting in part and denying in part, rather than wholly denying, the Special Compensation Fund's May 3, 2012 Motion to Dismiss and addressing any partial dismissal in its eventual summary disposition order; and

3.  Whether the ICA gravely erred in the May 31, 2012 order by granting in pertinent part the Special Compensation Fund's May 3, 2012 Motion to Dismiss with respect to . . . Waltrip's appeal from . . . [LIRAB's] August 29, 2011 "Order Denying Claimant's Request to Reconsider."

We hold as follows:

(1) because: (a) under Hawai'i Rules of Appellate Procedure ("HRAP") Rule 35(a), an order partially dismissing an appeal is not a "dispositional order"; (b) pursuant to HRS § 602-59(c) (Supp. 2011), "[a]n application for a writ of certiorari may be

5

filed with the supreme court no later than thirty days after the filing of the judgment or dismissal order of the intermediate appellate court," and (c) Waltrip timely filed her application for certiorari from the ICA's Judgment on Appeal, this court has jurisdiction to review both the ICA's Partial Dismissal Order and SDO which underpin the Judgment on Appeal;[3] (2) the ICA did not err in issuing its Partial Dismissal Order, rather than wholly denying Fund's Motion to Dismiss and later addressing any partial dismissal in its eventual SDO, as it has the power under HRS § 602-57(3) (Supp. 2010), "[t]o make or issue any order . . . necessary or appropriate in the aid of its jurisdiction . . . ," and also because it referred to its partial dismissal in its subsequent SDO; (3) in reviewing the Partial Dismissal Order, the ICA did not err in dismissing Waltrip's appeal of LIRAB's (a) July 2011 Decision and (b) Order Denying August Request, for untimeliness; and (4) pursuant to the fundamental tenets that "[p]leadings prepared by pro se litigants should be interpreted liberally," Dupree v. Hiraga, 121 Hawaiʻi 297, 314, 219 P.3d 1084, 1101 (2009) (citation omitted), and that "pleadings [and letters] in administrative proceedings are to be construed liberally rather than technically," id. (citing Perry v. Planning Comm'n, 62 Haw. 666, 685-86, 619 P.2d 95, 108

---

[3] The Judgment on Appeal was entered pursuant to the SDO; the SDO refers to the Partial Dismissal Order.

6

(1980)); <u>Doe v. Attorney General</u>, 135 Hawai'i 390, 399, 351 P.3d 1156, 1165 (2015) (discussing <u>id.</u>), the ICA erred in holding in its SDO that LIRAB had no authority to rule on the merits of Waltrip's September Request because it was essentially an unauthorized second motion for reconsideration under HRS § 386-87(d) (1993),[4] on the same grounds as the August Request, rather than viewing it as a motion to reopen under HRS § 386-89(c) (1993),[5] when Waltrip's September Request was filed more than a

---

[4]       In the absence of an appeal and within thirty days after mailing of a certified copy of the appellate board's decision or order, the appellate board may, upon the application of the director or any other party, or upon its own motion, reopen the matter and thereupon may take further evidence or may modify its findings, conclusions or decisions.  The time to initiate judicial review shall run from the date of mailing of the further decision if the matter has been reopened.  If the application for reopening is denied, the time to initiate judicial review shall run from the date of mailing of the denial decision.

HRS § 386-87(d).

[5]       On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, at any time prior to eight years after date of the last payment of compensation, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation.  No compensation case may be reviewed oftener than once in six months and no case in which a claim has been rejected shall be reviewed more than once if on such review the claim is again rejected. . . . This subsection shall not apply when the employer's liability for compensation has been discharged in whole by the payment of a lump sum in accordance with section 386-54.

HRS § 386-89(c).

7

year after LIRAB's hearing and she had attached post-hearing letters from her treating psychiatrist discussing both her physical and mental condition, which could be construed to constitute "substantial evidence . . . of a change in . . . a determination of fact related to [her] physical condition" pursuant to HRS § 386-89.  Such a motion, however, should have been submitted to the Director of DLIR instead of LIRAB.

Accordingly, we affirm the ICA's Judgment on Appeal. The ICA's Judgment as to the July 2011 Decision and August Request is affirmed.  The ICA's Judgment as to the September Request is affirmed on other grounds.

## II.  Background

### A.  Work Injury to LIRAB Proceedings

Waltrip sustained a work accident on September 18, 2001 while working for Restaurant.  On September 4, 2002, she filed a claim for workers' compensation benefits with DLIR. Waltrip described her work injury as pain in the left knee, reflex sympathetic dystrophy ("RSD"), neuropathy, atrophy, and depression.  Waltrip was represented by counsel during the proceedings before DLIR until April 2006.  Subsequently, she proceeded pro se.  The Director of DLIR issued numerous interim decisions on Waltrip's claim including a January 4, 2007 decision awarding Waltrip medical care, services, and supplies; temporary total disability benefits; permanent partial

disability benefits for her lumbar spine, psychological condition, and left leg; and $250 for disfigurement.

Both Waltrip and Employer appealed to LIRAB.  Waltrip appealed in part because the Director did not award her benefits for RSD.  Employer appealed in part because it disagreed with the permanent partial disability benefits awarded to Waltrip.

LIRAB scheduled a hearing to commence on October 12, 2009.  In a letter dated September 28, 2008, Waltrip's then treating physician, Dr. Paul Kaiwi, Jr. ("Dr. Kaiwi"), recommended that during the hearing, Waltrip should (1) have her legs elevated, (2) avoid contact with direct wind, air conditioning vents, or fans, and, (3) because of her sedating medications, be limited to one and one-half hours per day. Shortly after the hearing commenced on October 12, 2009, LIRAB became concerned that Waltrip would not be able to defend herself, speak on her own behalf, or cross-examine Employer's expert witness, based on the way she was speaking.  LIRAB therefore continued the hearing.

On July 19, 2010, LIRAB resumed proceedings on Oʻahu. After noting that Waltrip appeared to be falling asleep, LIRAB continued the hearing to the following afternoon.

At the start of the proceedings on July 20, 2010, LIRAB informed the parties that (1) after the close of the prior day's proceedings, Waltrip was taken to the hospital and (2)

9

LIRAB had spoken with Dr. Kaiwi by conference call that morning, in Waltrip's presence and with her consent.  According to LIRAB, after it informed Dr. Kaiwi that "Waltrip had fallen asleep at estimated intervals [of] once every minute or so," Dr. Kaiwi reported that except for one visit when Waltrip was a little drowsy, she had "acted appropriately" each time he had seen her.  Thus, he believed her falling asleep at the hearing might be evidence of "ulterior motives" or "malingering" behavior.  He advised LIRAB that he would no longer be her physician.  There was no indication, however, that Dr. Kaiwi had examined Waltrip on July 19, 2010, or inquired as to Waltrip's symptoms other than that observed by LIRAB.

Dr. Kaiwi also informed LIRAB during that phone conversation that Waltrip's medication included methadone at six-hour intervals and morphine at eight-hour intervals as needed for pain, and that he thought the methodone and morphine Waltrip had reported taking at 6:00 and 12:00 the day before had been appropriate.  Dr. Kaiwi also informed LIRAB that Waltrip was to take Soma and Neurontin every twelve hours, twice daily.

In response to follow up questions posed on the record by LIRAB to confirm the accuracy of LIRAB's representations regarding the phone call with Dr. Kaiwi, Waltrip reported she had not gotten sleep the night before, that she did not know how she could fake falling asleep, that she had not taken morphine

that day because she felt she did not need it, and that she took less pain medication than prescribed because she only took it three times daily as compared to the four times daily prescription. LIRAB proceeded with the hearing with Waltrip present, and concluded the hearing on July 21, 2010.

LIRAB issued its July 2011 Decision about one year after the hearings were held. LIRAB specifically found, among other things, "[b]ased upon the Board's observation of [Waltrip] and the evidence in the record, the Board doubts the accuracy of and motivation for [Waltrip]'s testimony. The Board does not find [Waltrip] to be a credible witness." LIRAB concluded that (1) Waltrip did not suffer from Complex Regional Pain Syndrome ("CRPS") or RSD; (2) Employer was liable for workers' compensation benefits relative to Waltrip's knee injury and psychological condition; (3) Waltrip did not provide credible evidence that she remained temporarily and totally disabled during the disputed period; (4) Waltrip did not suffer permanent partial disability to her leg or psyche as a result of the work injury, thus rendering apportionment moot; (5) Employer was not liable to reimburse Waltrip for disputed expenses; (6) Waltrip's medical care was not terminated by LIRAB's decision; and (7) Employer was not liable for a referral and a treatment plan. Thus, the July 2011 Decision affirmed the Director's decision denying Waltrip benefits for RSD and further reduced the

benefits that the Director had granted Waltrip by terminating all temporary total disability benefits and all permanent partial disability benefits.

Waltrip stated in her August Request:

> [T]his letter is a request to reconsider by the board the July 25th 2011 decision and order by the Appeals Board in the above case. The reason for the request is that I was unable to adequately represent myself at the proceedings due to my physical and psychological disability, nor was I able to adequately file necessary medical records in a timely fashion, arrange for expert witnesses or question opposing counsels [sic] witness effectively. I need legal representation and I am not competant [sic] to represent myself.

LIRAB denied the August Request without explanatory remarks.

On September 23, 2011, Waltrip then filed a document entitled "Request That the July 25th, 2011 Decision and Order Be Vacated and That [LIRAB] Issue a New Notice of Initial Conference and Restart the Proceedings All Over Again Including New Discovery Deadlines and a Retrial of the Issues" ("September Request"). In it, Waltrip stated:

> This request is a [sic] based on the fact that I was medically not capable of representing myself at trial as evidenced by the following[:]
>
> - pre-trial proceedings were postponed in 2008 as I was inpatient in the psychiatric unit at Maui Memorial Medical Centre [sic][;]
>
> - during the pre-trial conference I told the Appeals Board that I didn't understand the process[;]
>
> - At the initial Trial in 2009 the Appeals Board postponed the Trial ruling that I was unable to participate and sent me home[;]
>
> - The Appeals Board ordered me to take medications as prescribed by Dr. Paul Ka'iwi. The medical records show that Dr. Ka'iwi had tripled the narcotic/sedating medications in the months before

12

> Trial in [an] attempt to control the chronic pain. Hence I was unable to maintain consciousness at Trial[;]
>
> - Again on the first day of the next Trial (July 19th, 2010) the Board ruled that I could not participate and called an ambulance[;]
>
> - After spending hours under observation at Queens Medical Centre [sic] on July 19th, 2010, the Board commenced the Trial on July 20th, 2010 regardless of my ability to participate effectively[;]
>
> - The additional proof that Mr[.] McKee requested in his August 25, 2011 letter is provided by Dr[.] Grace Marian, included with this letter.

Waltrip's September Request included two recent letters from her psychiatrist, Dr. Grace Marian, which indicated that Waltrip had been her patient since December 2, 2010. An August 23, 2011 letter stated that because of her depression, "Complex Pain Syndrome," numerous medications, and "unstable" psychiatric status, "it is definitely not possible" for Waltrip to work thirty hours per week and that Waltrip "should remain on full disability for at least a year . . . ." Dr. Marian's September 20, 2011 letter stated that Waltrip's depressive disorder, insomnia, lethargy, "Complex Pain Syndrome," and the medications she was taking for treatment rendered her "not . . . capable of representing herself in court."

On September 28, 2011, LIRAB issued an order that construed Waltrip's September Request as a motion to vacate, and denied it.

13

B.    ICA Proceedings

Waltrip filed a notice of appeal with the ICA on September 29, 2011, stating she was appealing from (1) the July 2011 Decision and (2) the Order Denying August Request.  On October 28, 2011, she then submitted another notice of appeal (which was docketed as an amended notice of appeal), this time stating that she was appealing from the (1) July 2011 Decision and (2) the Order Denying September Request.

Employer and Fund filed jurisdictional statements contesting the ICA's jurisdiction on December 12, 2011.  The next day, Fund amended its statement, but nevertheless contested the ICA's jurisdiction.  After the ICA had granted Waltrip two extensions, Waltrip timely filed a jurisdictional statement on February 21, 2012.  In it, Waltrip clarified that her appeal was of the July 2011 Decision, Order Denying August Request, and Order Denying September Request.  She further explained that Dr. Marian's September 20, 2011 letter, which was included with her September Request, served as "credible proof" that she was not capable of representing herself.  Waltrip also pointed out that LIRAB's July 2011 Decision "should have[, but did not] contain[]," language notifying her of the time frame in which an appeal may be filed.  Further, she asserted that when she called LIRAB on September 28, 2011, she was twice verbally advised that her appeal to the ICA was due on September 29, 2011.

14

On May 3, 2012, Fund filed a Motion to Dismiss Waltrip's appeals from all three orders (July 2011 Decision, Order Denying Claimant's August Request, and Order Denying September Request) for lack of appellate jurisdiction.  Fund argued that the ICA lacked jurisdiction over Waltrip's appeal of the July 2011 Decision and the Order Denying August Request because Waltrip's appeal was one day late under HRS § 386-87(d) (1993) and HRS § 386-88 (Supp. 2010), as she filed her notice of appeal on September 29, 2011, when the filing deadline was September 28, 2011.  With respect to the Order Denying September Request, Fund argued that the ICA lacked subject matter jurisdiction over Waltrip's appeal because:  (1) there is "no legal authority for a second motion for reconsideration" before LIRAB; and (2) even if LIRAB had authority over a second motion for reconsideration, Waltrip's motion was untimely under HRS § 386-87 and Hawai'i Administrative Rules ("HAR") § 12-47-53[6]

---

[6] **Reconsideration or reopening of decision or order.**
(a) In the absence of an appeal and within thirty days after mailing of a copy of the board's decision or order, the board may, upon the request of any party, or upon its own motion, reconsider or reopen the matter. If reopening is allowed, the board may take further evidence or may modify its decision or order. The time to initiate judicial review shall run from the date of mailing of the further decision if the matter has been reconsidered or reopened. If the request for reconsideration or reopening is denied, the time to initiate judicial review shall run from the date of mailing the denial decision. (b) The request for reconsideration or reopening shall be in writing and shall be served upon all parties. The request shall specify the reasons why reconsideration or reopening is warranted. (c)

(continued . . .)

because it was filed sixty days after the July 2011 Decision was entered.

On May 31, 2012, the ICA granted Fund's motion to dismiss with respect to the July 2011 Decision and the Order Denying August Request, but denied the motion with respect to the Order Denying September Request. The ICA, noting that it "might have appellate jurisdiction" over the Order Denying September Request, directed the parties to proceed with briefing as to this order.

After considering the parties' briefs, the ICA held in its SDO that LIRAB had no authority to rule on the merits of Waltrip's September Request because it "essentially was a second motion for reconsideration on the same grounds as the first . . . ." Waltrip, No. CAAP-11-0000722, SDO at 2. Accordingly, the ICA vacated LIRAB's second post-judgment order and remanded the case to the LIRAB "for entry of an order dismissing the motion [to vacate] for lack of jurisdiction." Id. at 2.

## C. Waltrip's Application for a Writ of Certiorari

Waltrip timely filed an application for a writ of certiorari. Waltrip's application stated that she was appealing the ICA's SDO and Judgment on Appeal. Her application did not

(. . . continued)
> A hearing on the request for reconsideration or reopening
> may be held at the board's discretion.

HAR § 12-47-53.

16

state that she was appealing the Partial Dismissal Order.

Notably, other than Waltrip asserting that she was appealing the

ICA's SDO, the application lacks any argument regarding the

ICA's disposition.

This court accepted certiorari pursuant to its

discretionary authority under HRS § 602-59(a) (Supp. 2011), to

consider various procedural issues implicated by these pro se

proceedings before LIRAB and the ICA.  See State v. Fields, 115

Hawai'i 503, 536, 168 P.3d 955, 988 (2007) (stating that HRS §

602-59(b) "is not descriptive of the scope of review

determinative of the supreme court's decision to grant or deny

certiorari" (quoting Conf. Comm. Rep. No. 73, in 1979 Senate

Journal, at 992 (internal quotation marks, emphases, and

brackets omitted))).

### III.  Standards of Review

**A.   LIRAB's Decision**

> Ordinarily, deference will be given to decisions of
> administrative agencies acting within the realm of their
> expertise.  The rule of judicial deference, however, does
> not apply when the agency's reading of the statute
> contravenes the legislature's manifest purpose.
> Consequently, we have not hesitated to reject an incorrect
> or unreasonable statutory construction advanced by the
> agency entrusted with the statute's implementation.

Coon v. City & Cnty. of Honolulu, 98 Hawai'i 233, 245, 47 P.3d

348, 360 (2002) (internal quotation marks, citations, and

brackets omitted).

17

The standard of review for decisions of the LIRAB is well-established:

Appellate review of a LIRAB decision is governed by HRS § 91-14(g) (1993), which states that:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

We have previously stated:

[Findings of Fact] are reviewable under the clearly erroneous standard to determine if the agency decision was clearly erroneous in view of reliable, probative, and substantial evidence on the whole record.

[Conclusions of Law] are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, in excess of statutory authority or jurisdiction of agency, or affected by other error of law.

A [Conclusion of Law] that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case. When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field. The court should not substitute its own judgment for that of the agency.

18

Igawa v. Koa House Rest., 97 Hawaiʻi 402, 405-06, 38 P.3d 570, 573-74 (2001) (quoting In re Water Use Permit Applications, 94 Hawaiʻi 97, 119, 9 P.3d 409, 431 (2000)) (internal quotation marks, citations, and brackets in original omitted).

> An FOF or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

In re Water Use Permit Applications, 94 Hawaiʻi at 119, 9 P.3d at 431 (internal quotation marks and citations omitted).

**B.   Jurisdiction**

"[T]he existence of jurisdiction is a question of law that [is] review[ed] de novo under the right/wrong standard." Captain Andy's Sailing, Inc. v. Dep't of Land & Natural Res., 113 Hawaiʻi 184, 192, 150 P.3d 833, 841 (2006) (internal quotation marks and citation omitted).

## IV.  DISCUSSION

We first clarify that this court has the authority to consider the entirety of the ICA's disposition of Waltrip's appeal.  That is, although certain portions of Waltrip's appeal had been dismissed pursuant to the ICA's Partial Dismissal

19

Order, that order became eligible for further appellate review upon the ICA's disposition of Waltrip's entire appeal.[7]

Certainly, the ICA may choose to address issues raised in a notice of appeal in a piecemeal fashion, as it did here, to assist in the efficient disposition of cases. See HRS § 602-57(3) ("[T]he [ICA] shall have jurisdiction . . . [t]o make or issue any order . . . necessary or appropriate in the aid of its jurisdiction . . . ."). For example, that the ICA issued the Partial Dismissal Order prior to the deadline for Employer and Fund to file answering briefs, likely prompted the parties to more fully discuss remaining issues instead of addressing matters on which the court had already ruled.

The ICA's management of its cases, however, does not alter HRAP's contemplation that a writ of certiorari only be from an order that is actually case dispositive[8] or otherwise

_____

[7] This occurred on October 2, 2014, the issue date of the ICA's Judgment on Appeal.

Orders of dismissal do not generally require an entry of judgment. See HRAP Rule 36(b)(1) ("After a final decision, other than an order of dismissal, has been filed in an appeal, the court rendering the decision shall prepare and submit to the appellate clerk for filing the judgment on appeal, signed by a judge or justice for the court."). However, here, in addition to dismissing Waltrip's appeal by way of its SDO, the ICA had also vacated LIRAB's Order Denying September Request and remanded the case to LIRAB for entry of an order dismissing the motion for lack of jurisdiction. Accordingly, a judgment on appeal was warranted, and therefore Waltrip's appeal was not disposed of until the judgment issued.

[8] This is so, even if the underlying notice of appeal also encompasses multiple post-judgment motions that may be separately ruled upon by the ICA. See HRAP Rule 4(a)(3) ("The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after the entry of the judgment or order.").

20

immediately appealable.  See Greer v. Baker, ___Hawai'i___, ___P.3d___, No. SCWC-15-0000034, slip op. passim (Feb. 22, 2016) (stating examples of immediately appealable orders).  This is evident by the use of singular nouns and the lack of specific reference in the HRS and HRAP that a non-case-dispositive partial dismissal order can serve as the basis for an application for a writ of certiorari.  See HRS § 602-59(a) (Supp. 2011) ("After issuance of the intermediate appellate court's judgment or dismissal order, a party may seek review of the intermediate appellate court's decision and judgment or dismissal order only by application to the supreme court for a writ of certiorari, the acceptance or rejection of which shall be discretionary upon the supreme court."); HRAP Rule 40.1(a)(1) ("A party may seek review of the intermediate court of appeals' decision by filing an application for a writ of certiorari in the supreme court.  The application shall be filed within 30 days after the filing of the intermediate court of appeals' judgment on appeal or dismissal order, unless the time for filing the application is extended in accordance with this Rule.").

In addition, HRS § 602-59(d) provides that the clerk "shall forward the complete file of the case to the supreme court" upon the acceptance of an application for a writ of certiorari.  In most appeals, there is no longer a hard file due

to the advent of electronic filing. This statute signifies, however, a legislative intent that a single case file be in the custody of a single appellate court at any given time.

Interrupting the ICA's review in this manner would be inconsistent with the legislature's reasons for creating the ICA; that is, to address "'the evergrowing congestion of cases at the appellate level of our judicial system and the concurrent increase in the length of time it takes for both civil and criminal cases to reach a conclusion.'" Conf. Comm. Rep. No. 70, in 1979 House Journal, at 1122, Conf. Comm. Rep. No. 73, in 1979 Senate Journal, at 989 (quoting Stand. Comm. Rep. No. 52, in 1978 Proceedings of the Constitutional Convention of Hawaii, Vol. 1, at 617) (emphasis added); see id., in 1979 House Journal, at 1122–1123, Conf. Comm. Rep. No. 73, in 1979 Senate Journal, at 990 (noting that the discussion by delegates to the Constitutional Convention was "comprehensive," "thoughtful," and "helpful"). This purpose has endured, even after our appellate system transitioned to its current three-tiered form, as evidenced by the legislature's concerns as to whether the new system "will affect rates of appeal, timeliness of decision-making, and caseload management." 2004 Haw. Sess. Laws Act 202, § 83 at 948.

In this light, it is clear that when the phrase "or dismissal order" was added in 2006 to HRS § 602-59(a),[9] it was intended to address the ICA's assumption of new caseload management functions following implementation of Act 202, which included ruling on potentially case dispositive motions. See Judge Gail C. Nakatani, Judicial Council of Hawai'i, Final Report of the Appellate Review Task Force ("Task Force") 4, 41 (App. C) (2005). In other words, the addition of the phrase "or dismissal order," clarified that an application for writ of certiorari may also be filed after the ICA issues a dispositional order that may not be a "judgment." It can be further inferred from the legislature's minimal discussion regarding the addition of the phrase "or dismissal order" that

_____

[9] Act 149 of the 2006 legislative session amended HRS § 602-59 to read as follows:

> "(a) After issuance of the intermediate appellate court's judgment[,] or dismissal order, a party may seek review of the intermediate appellate court's decision and judgment or dismissal order only by application to the supreme court for a writ of certiorari, the acceptance or rejection of which shall be discretionary upon the supreme court.
>     (b) The application for writ of certiorari shall tersely state its grounds[.], which shall include:
>     (1) Grave errors of law or of fact; or
>     (2) Obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decision, or its own decision,
> and the magnitude of those errors or inconsistencies dictating the need for further appeal.
>
> . . . ."

2006 Haw. Sess. Laws Act 149, § 1 at 409.

23

the amendment was not intended to alter the legislature's clear purpose that parties' appeals be resolved as efficiently as possible. See Stand. Comm. Rep. No. 2254, in 2006 Senate Journal, at 1136 (stating that the proposed bill was "based upon a recommendation by the Hawaii Appellate Review Task Force to the Judiciary"); Task Force, at 12-13 (discussing criteria for writ of certiorari, but lacking any specific discussion of the phrase, "or dismissal order").

Moreover, we observe that Act 149's insertion of the phrase "or dismissal order" into part (a) of HRS § 602-59, should be construed together with the entirety of Act 149's amendments to the statute, specifically, the reinstatement of criteria for applications for writ of certiorari into part (b). See text supra n.9. An applicant would be hard-pressed to explain why the "magnitude of [the ICA's] error or inconsistencies" with respect to a partial dismissal order "dictat[es] the need for further appeal," when the magnitude of such error might be readily mitigated by the ICA's resolution of the remaining issues on appeal. 2006 Haw. Sess. Laws Act 149, § 1 at 409.

Accordingly, in cases in which the ICA separately addresses raised issues, a party's thirty-day window to file an application for a writ of certiorari regarding the ICA's decision on any of the raised issues, begins when an appeal is

24

disposed of in its entirety and judgment on appeal entered, if required under HRAP Rule 36.  For example, when a petitioner timely files her application within thirty days of the date of issue of the ICA's judgment on appeal, as did Waltrip here, this court has the authority to consider the entirety of the ICA's disposition.  This means that in this case, we may examine both the Partial Dismissal Order and the SDO.

Next, although this court has the authority to consider the entirety of the ICA's disposition of Waltrip's appeal,[10] we observe that it is undisputed that the Application states that Waltrip seeks a "writ of certiorari of the October 2nd 2014 Judgment on Appeal," which was entered solely "[p]ursuant to the Summary Disposition Order . . . entered on August 28, 2014," but fails to state the grounds upon which she contests that Judgment.  Waltrip herself recognized the scantiness of her Application when she moved for, and was denied, an "Extension to File Paperwork on Writ of Certiorari."

Nevertheless, it was apparent to this court that the ICA's SDO focused on the single issue of LIRAB's subject matter jurisdiction over Waltrip's pro se September Request, and that therefore the only self-evident challenge to the ICA's Judgment

---

[10] The ICA did not err in issuing its Partial Dismissal Order.  It had the authority to issue the order pursuant to HRS § 602-57(3), and correctly determined that the notice of appeal was untimely filed as to the July 2011 Decision and August Request.

25

and SDO would be based on error associated with the ICA's sua sponte jurisdictional determination due to its recharacterization of Waltrip's September Request.[11]

With these specific circumstances forming the backdrop, we granted Waltrip's pro se Application.

## A. Waltrip's September Request Could Have Reasonably Been Construed as a Motion to Reopen

In its Order Denying September Request, LIRAB construed Waltrip's September 23, 2011 "Request That the July 25th, 2011 Decision and Order Be Vacated and That the Labor and Industrial Relations Appeals Board Issue a New Notice of Initial Conference and Restart the Proceedings All Over Again Including New Discovery Deadlines and a Retrial of the Issues" as a "non-hearing Motion to Vacate the Board's Decision of July 25, 2011" and denied it without further explanation.  The ICA's August 28, 2014 Summary Disposition Order concluded that LIRAB's Order Denying September Request was error because LIRAB should have instead "dismissed the motion for lack of subject matter jurisdiction" as Waltrip's September Request was "essentially . . . a second motion for reconsideration on the same grounds as

---

[11]    Moreover, we note that in Waltrip's Supplemental Brief, under the header, "obvious inconsistencies in the decisions of the Intermediate Appellate Court with that of Supreme Court, federal decions [sic] or its own decision, and the magnitude of those errors or inconsistencies dictating the need for further appeal," Waltrip stated: "The Intermediate Court of Appeals had no valid reason for their [sic] denial of October 2, 2014 where they did have jurisdiction."

the first." Waltrip, No. CAAP-11-0000722, SDO at 2 (citation omitted). The entirety of the ICA's discussion reads as follows:

> Waltrip does not suggest a statutory or regulatory basis supporting her September 23, 2011 motion to vacate, which essentially was a second motion for reconsideration on the same grounds as the first, and we can find none. We hold that there was no authority for the Board to rule on the merits of the motion and, as such, rather than issuing a denial, the Board should have dismissed the motion for lack of subject matter jurisdiction. See Hawaii Mgmt. Alliance Ass'n v. Ins. Comm'r, 106 Hawai'i 21, 27, 100 P.3d 952, 958 (2004) (holding that the insurance commissioner's authority to hear external review appeals, as authorized by statute, was a question of subject matter jurisdiction); see also Bush v. Watson, 81 Hawai'i 474, 480, 918 P.2d 1130, 1136 (1996) (stating that dismissal for lack of subject matter jurisdiction is not an adjudication on the merits). Accordingly, we vacate the . . . Order [Denying September Request] because the Board lacked subject matter jurisdiction. Haw. Rev. Stat. § 386-87(d) (1993).

Waltrip, No. CAAP-11-0000722, SDO at 2 (footnoted omitted).

Notably, when the September Request was before LIRAB, neither Fund nor Employer objected to the September Request on grounds that LIRAB lacked jurisdiction. Accordingly, the ICA's decision was premised on its subsequent recharacterization of Waltrip's Request as a second motion for reconsideration, and consequent examination of jurisdictional defects based on that recharacterization.

Contrary to the ICA's characterizations, on their faces, the August Request and September Request were not submitted on "essentially . . . the same grounds." Waltrip, No. CAAP-11-0000722, SDO at 2. Although the ICA accurately noted that Waltrip relied in both requests on the same assertion —

27

that she was "unable to adequately represent [her]self at the proceedings" — the nature of each request differed.  The August Request asked the Board to reconsider its ruling given Waltrip's assertion that she is "not competant [sic] to represent [her]self."

In contrast, the September Request asked for the July 2011 ruling to be vacated and that proceedings be re-initiated so that Waltrip could conduct discovery anew and have a new trial.  Additionally, Waltrip provided with her September Request copies of two letters from her treating psychiatrist, Dr. Grace Marian, concerning Waltrip's psychiatric treatment and mental and physical conditions.  Dr. Marian began treating Waltrip in December 2010 after the Board conducted its hearing on Waltrip's claims, and both letters were dated after the Board's July 25, 2011 ruling issued.  Reading Waltrip's Request in the light of (1) the submission of Dr. Marian's letters that include references to Waltrip's pain, insomnia, and lethargy, and (2) that it had been over a year since the Board's hearing, leads to a reasonable, liberal construction of the Request as a motion to reopen the case under the Director's continuing jurisdiction pursuant to HRS § 386-89.[12]

---

[12] See text supra n.5.

28

Thus, although the ICA's instruction to LIRAB to dismiss Waltrip's September Request for lack of jurisdiction is not incorrect, we disagree with the ICA's reasoning.  The September Request should not have been construed as a second "request to reconsider," but rather as a motion to reopen under HRS § 386-89(c) that was inappropriately filed with LIRAB instead of the Director.

**B.  Hawaii's Commitment to Access to Justice for All Litigants Requires That Waltrip's September 23, 2011 Request Not Be "Construed Away"**

A fundamental tenet of Hawai'i law is that "[p]leadings prepared by pro se litigants should be interpreted liberally." Dupree, 121 Hawai'i at 314, 219 P.3d at 1101 (citation omitted). The underpinnings of this tenet rest on the promotion of equal access to justice — a pro se litigant should not be prevented from proceeding on a pleading or letter to an agency if a reasonable, liberal construction of the document would permit him or her to do so.   See Doe, 135 Hawai'i 390, 351 P.3d 1156 (holding the ICA erred in affirming the circuit court's dismissal of pro se litigant's agency appeal based on lack of jurisdiction, as circuit court should have liberally construed litigant's letter as initiating administrative proceedings); see also, e.g., Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to

29

liberally construe the 'inartful pleading' of pro se litigants." (citing Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam)).

Federal courts have extended this "liberality doctrine" to include pro se motions in certain scenarios. Christensen v. Comm'r, 786 F.2d 1382, 1385 (9th Cir. 1986); see, e.g., Bernhardt v. Los Angeles Cnty., 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints." (citations omitted)) (reviewing district court's denial of pro se plaintiff's motion for preliminary injunction barring defendant county from settling plaintiff's civil rights action in a way that interferes with her counsel's ability to apply for attorney's fees under 42 U.S.C. § 1988). Such scenarios may "extend[] . . . beyond the prisoner/civil rights context." Christensen, 786 F.2d at 1385 ("Tax disputes that involve relatively minor sums may be of great significance to less wealthy taxpayers. Such taxpayers' access to Tax Court review should not be barred by legal technicalities. . . . In light of the policy favoring liberal reading of pro se litigants' papers, we find that the 'Motion to Place the Following Statements in the Record' should have been treated as a motion to amend. We remand so that the Tax Court can consider whether to grant that motion.").

30

Waltrip's circumstances, which center on a workers' compensation claim, warrant similar application of the "liberality doctrine." As the only recovery available for an employee who is injured at work is typically a statutory award under Hawaii's workers' compensation law,[13] and as the law embodies a "broad humanitarian purpose," Lawhead v. United Air Lines, 59 Haw. 551, 560, 584 P.2d 119, 125 (1978) (internal quotation marks and citation omitted), to "(1) restore the injured employee, and (2) to compensate the employee adequately," Alvarez v. Liberty House, Inc., 85 Hawaiʻi 275, 278, 942 P.2d 539, 542 (1997) (citation omitted), an employee proceeding pro se should not be prevented from fully litigating his or her claim simply because his or her filings are "inartful" and fails to reference a statute by number, or correctly address a request to the Director or LIRAB. Thus, just as Hawaii's workers' compensation law should be "'construed liberally in order to accomplish the purpose for which it was

---

[13] **Exclusiveness of right to compensation; exception.** The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

HRS § 386-5 (1993).

enacted,'" <u>Alvarez</u>, 85 Hawai'i at 278, 942 P.2d at 542 (quoting <u>Flores v. United Air Lines, Inc.</u>, 70 Haw. 1, 12, 757 P.2d 641, 647 (1988)), so, too, should pro se pleadings, including motions, in workers' compensation cases.

Had LIRAB properly dismissed Waltrip's September Request for lack of jurisdiction based on the filing of a motion to reopen with LIRAB instead of the Director, Waltrip would have been alerted with whom to appropriately file her Request so that she may seek benefits that she perceived to have been improperly denied.  In contrast, the ICA's incorrect construction of the September Request as a second motion for reconsideration provided Waltrip, a pro se litigant, little guidance.[14]

**C.  Courts and Agencies Should Construe Pro Se Filings in a Reasonable Manner That Enables Them to Promote Access to Justice**

Instructive on the issue of the scope of a court's discretion to recharacterize a motion is <u>Mata v. Lynch</u>, 135 S. Ct. 2150 (2015).  Mata was an illegal alien who was ordered by an immigration judge to leave the country.  Mata's attorney

---

[14] Indeed, access to justice also means making court and agency communications readily informative, particularly with respect to workers' compensation cases, so that the law's "broad humanitarian purpose" is furthered.  For example, had LIRAB included a notice in its Order Denying August Request that the deadline to file a  notice of appeal was within thirty (30) days of the date the order was mailed, Waltrip would have been officially informed of relevant due dates.  This may have avoided what Waltrip asserts to have occurred: that she relied on incorrect information she orally received from a LIRAB employee, leading her to file a notice of appeal one day too late.  <u>See</u> <u>Mauna Kea Anaina Hou v. Bd. of Land & Natural Res.</u>, 136 Hawai'i 376, 389, 363 P.3d 224, 237 (2015) ("[T]he manner in which the justice system operates must be fair and must also appear to be fair." (citing <u>Sifagaloa v. Bd. of Trs. of Emps.' Ret. Sys.</u>, 74 Haw. 181, 190, 840 P.2d 367, 371 (1992))).

filed with the Board of Immigration Appeals ("Immigration Board") a notice of appeal of the immigration judge's decision, and indicated that a written brief in support of the appeal was forthcoming. Ultimately, however, no brief was filed and the Immigration Board dismissed Mata's appeal. Over one hundred days after the Immigration Board's dismissal, new counsel for Mata filed a motion with the Immigration Board to reopen his case pursuant to 8 U.S.C. § 1229a(c)(7)(A) (2012). Although such motions must typically be filed within ninety days of the final removal order, see 8 U.S.C. § 1229a(c)(7)(C)(i) (2012), Mata argued that he timely filed his motion because "[Mata's] first lawyer's 'ineffective assistance' counted as an 'exceptional circumstance[]' excusing his lateness." Mata, 135 S. Ct. at 2153 (second brackets in original). The Immigration Board disagreed and dismissed the motion as untimely. The Immigration Board also declined to exercise its separate authority to reopen the case sua sponte.

Mata petitioned the Fifth Circuit Court of Appeals, arguing that the Immigration Board improperly denied his motion to reopen as he was entitled to equitable tolling given his initial counsel's ineffective assistance. Instead of addressing Mata's appeal on its merits, the Fifth Circuit "construed [Mata's motion] as an invitation for the [Immigration Board] to exercise its discretion to reopen the removal proceeding sua

33

sponte" and dismissed Mata's appeal for lack of jurisdiction. Mata v. Holder, 558 F. App'x 366, 367 (2014) ("As the [Immigration Board] has complete discretion in determining whether to reopen sua sponte under 8 C.F.R. § 1003.2(a), and we have no meaningful standard against which to judge that exercise of discretion, we lack jurisdiction to review such decisions." (citation omitted)).

The United States Supreme Court reversed. Contrary to the Fifth Circuit's assessment that only the Immigration Board's denial to sua sponte reopen the case was at issue, the Court first observed that the Immigration Board's decision separately addressed two matters: (1) Mata's motion to reopen, and (2) whether the Immigration Board should sua sponte reopen the case. "That courts lack jurisdiction over one matter (the sua sponte decision) does not affect their jurisdiction over another (the decision on [Mata]'s request)." Mata, 135 S. Ct. at 2155. In other words, "[t]he Court of Appeals did not lose jurisdiction over the [Immigration] Board's denial of Mata's motion just because the [Immigration] Board also declined to reopen [Mata's] case sua sponte." Id.

Even if, based on a presumption that the Immigration and Nationality Act does not permit equitable tolling,

> the right course on appeal is to take jurisdiction over the case, explain why that is so, and affirm the [Immigration Board]'s decision not to reopen. The jurisdictional

34

> question (whether the court has power to decide if tolling is proper) is of course distinct from the merits question (whether tolling is proper). The Fifth Circuit thus retains jurisdiction even if Mata's appeal lacks merit. . . . Accordingly, the Court of Appeals should have asserted jurisdiction over Mata's appeal and addressed the equitable tolling question.

Mata, 135 S. Ct. at 2156 (citations omitted). The Supreme Court then noted that "the Fifth Circuit's practice of recharacterizing appeals like Mata's as challenges to the Board's sua sponte decisions and then declining to exercise jurisdiction over them" prevents potential splits among the circuits from "coming to light" and addressed by the Court. Id. ("[T]he Fifth Circuit may not . . . wrap . . . a merits decision in jurisdictional garb so that we cannot address a possible division between that court and every other.").

> If a litigant misbrands a motion, but could get relief under a different label, a court will often make the requisite change. But that established practice does not entail sidestepping the judicial obligation to exercise jurisdiction. And it results in identifying a route to relief, not in rendering relief impossible. That makes all the difference between a court's generously reading pleadings and a court's construing away adjudicative authority.

Id. (citation omitted) (emphasis added).

Just as federal appellate courts should not "construe away" jurisdiction and prevent substantive decisions from "coming to light," so, too, should Hawaii's courts and agencies not construe pro se filings in a manner that leads to a decision that does not promote access to justice, or, as pertinent here, does not further the "humanitarian purpose of the workers'

35

compensation statute." Panoke v. Reef Dev. of Haw., Inc., 136 Hawai'i 448, 462, 363 P.3d 296, 310 (2015) ("[T]he broad humanitarian purpose of the workers' compensation statute read as a whole requires that all reasonable doubts be resolved in favor of the claimant[.]" (quoting Van Ness v. State, Dep't of Educ., 131 Hawai'i 545, 558, 319 P.3d 464, 477 (2014)) (citation, internal quotation marks, and emphasis omitted)). Instead, pro se filings, even when "misbranded," should be reasonably construed in a manner that "results in identifying a route to relief, not in rendering relief impossible." Mata, 135 S. Ct. at 2156. In this case, in identifying a "route to relief," LIRAB should have informed Waltrip that she filed her September Request before the wrong governmental entity.

## V. Conclusion

For the foregoing reasons, we affirm the ICA's Judgment on Appeal. The ICA's Judgment as to the July 2011 Decision and August Request is affirmed. The ICA's Judgment as to the September Request is affirmed on other grounds. This case is remanded to LIRAB for entry of an order dismissing the September Request for lack of jurisdiction. Such dismissal shall indicate that it is without prejudice to any subsequent

36

attempt by Waltrip to request that the Director reopen her case pursuant to HRS § 386-89.


Deborah J. Waltrip,                     /s/ Sabrina S. McKenna
petitioner pro se
                                        /s/ Richard W. Pollack
Robyn M. Kuwabe,
for respondent, Special                 /s/ Michael D. Wilson
Compensation Fund



Robert E. McKee, Jr.,
for respondents, TS Enterprises,
Inc., dba Kimo's Restaurant, and
Fireman's Fund Insurance Company