Electronically Filed
Supreme Court
SCWC-17-0000762
18-JUN-2020
11:38 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o---

THEODORICO ERUM, JR.,
Petitioner/Plaintiff-Appellant,

vs.

JOSUE BUMATAY LLEGO,
Respondent/Defendant-Appellee.

SCWC-17-0000762

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000762; CIV. NO. 14-1-0199)

JUNE 18, 2020

McKENNA, POLLACK, AND WILSON, JJ., WITH NAKAYAMA, J.,
DISSENTING, WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY POLLACK, J.

This appeal challenges the granting by the circuit court of a defendant's ex parte oral motion to dismiss a case with prejudice. The case involves a personal injury claim brought by a pro se litigant, who did not attend the pretrial

conference at which the oral motion to dismiss was made and granted.

For the reasons discussed, we hold that the circuit court abused its discretion in granting the defendant's oral motion to dismiss with prejudice because the record does not provide a valid basis for the dismissal order, and the court failed to make the requisite findings of fact that would be required to support such an order in any event. We also reaffirm that motions must generally be made in writing with notice provided as required by our procedural rules unless the motion is made during a hearing or trial. And, we again note that Hawaiʻi courts should liberally construe the filings of pro se litigants. Finally, because the Intermediate Court of Appeals relied upon monetary sanctions imposed by the circuit court upon the plaintiff in affirming the dismissal order, we review the sanction orders in light of applicable law.

## I. BACKGROUND

### A.   Trial Court Proceedings

On July 10, 2013, Theodorico Erum, Jr., filed a Statement of Claim against Josue Bumatay Llego in the Small Claims Court of the Fifth Circuit (small claims court) in the amount of $2,650.00 for property damage to his vehicle from a July 12, 2012 automobile collision in Kapaʻa, Hawaiʻi. In his

Statement of Claim, Erum stated that, on the day of the accident, he was stopped at a traffic sign when the rear end of his Toyota pickup truck was struck by a Dodge taxi van driven by Llego. The small claims court entered final judgment in Erum's favor on August 6, 2013, and he was awarded $236.69 in damages, plus fees and mileage for a total amount of $311.69 (small claims court judgment).

On July 11, 2014, Erum, proceeding pro se, filed a complaint against Llego in the District Court of the Fifth Circuit (district court) alleging personal injuries and property damage arising out of the July 12, 2012 automobile accident.[1] Llego, through an attorney, filed an answer on September 15, 2014, disputing liability and damages and making a demand for a jury trial, which resulted in the commitment of the case from the district court to the Circuit Court of the Fifth Circuit (circuit court).[2]

On June 10, 2015, Erum moved for an extension of time to file his pretrial statement, which Erum indicated had been

---

[1] Erum studied law via a correspondence course and became licensed to practice law in California in 1968. He has never received a law degree. He practiced law as a sole practitioner in Los Angeles for approximately three and a half years until about 1972-1973, when he returned to Hawai'i to care for his parents. Erum did not obtain a license to practice law in Hawai'i after returning and has never practiced law in this state.

[2] All circuit court proceedings were presided over by the Honorable Randal G.B. Valenciano.

due on June 6, 2015. The court granted the motion, and the due date for Erum's pretrial statement was continued to December 6, 2015. Erum neglected to file a pretrial statement by that date, and on March 7, 2016, Llego filed a motion to dismiss the case for failure to prosecute. Erum filed his pretrial statement on March 16, 2016, and an opposition to Llego's motion to dismiss on March 21, 2016. In a declaration attached to his memorandum in opposition, Erum averred that his failure to submit his pretrial statement was due to his mistakenly placing the wrong date in his personal calendar as the due date, and that the error was brought to his attention by Llego's March 7 motion to dismiss.

In an order entered on May 13, 2016, the circuit court found that although Erum did not timely submit his pretrial statement, dismissal was "too harsh a sanction." However, the court stated that Erum's failure to timely file his pretrial statement "compelled Defendant to file the Motion."[3] On that basis, the court ordered Erum to pay all attorneys' fees and costs related to the motion, including the fees and costs related to drafting the order denying Llego's motion to dismiss

---

[3] There is no indication in the record that Llego communicated to Erum that a motion to dismiss would be filed if a pretrial statement was not filed by a specific date.

4

and reducing the order to a judgment. The court did not cite the authority pursuant to which the sanction was awarded, nor did the court find that Erum had acted in bad faith by failing to file his pretrial statement. Based on a declaration filed by defense counsel, the court awarded Llego $3,007.79 in attorneys' fees and $272.40 in costs.[4]

On May 16, 2016, Erum filed a motion requesting that the circuit court schedule a status conference for the purpose of setting a trial date. The court entered an order granting Erum's motion and scheduled a trial setting status conference for June 21, 2016. At the status conference, Erum and Llego agreed to a jury trial with a duration of three to four days. On July 5, 2016, the court filed an order setting a pretrial conference on December 22, 2016, and scheduling trial for the week of January 17, 2017.

On July 11, 2016, Llego moved to dismiss with prejudice Erum's property damage claim, arguing that the judgment of the small claims court barred his property damage claim under the doctrine of res judicata. Llego also sought an award of attorneys' fees and costs, alleging that Erum knew that

---

[4]    The order that specified the amount of the award also did not contain any other findings or conclusions. This is similarly true of the other orders in this case in which the court specified the amount of monetary sanctions awarded.

his claim was frivolous and barred by res judicata, that defense counsel had informed Erum that it would seek sanctions if Erum refused to voluntarily dismiss his claim with prejudice, and that Erum had not so dismissed his claim.

Erum did not file an opposition to Llego's motion and instead, on July 27, 2016, Erum filed a Cross-Motion for Continuance of Hearing on Defendant's Motion to Dismiss with Prejudice Plaintiff's Property Damage Claim (cross-motion), stating that he was seeking vacatur of the small claims court judgment via writ of mandamus to this court, and that his claim would not be barred if the requested writ was issued. Erum filed a petition for writ of mandamus on August 5, 2016, and this court issued an order denying his petition on August 18, 2016. Erum v. Kobayashi, No. SCPW-16-0000550, 2016 WL 4398441 (Aug. 18, 2016). On December 2, 2016, the circuit court entered a written order granting Llego's motion to dismiss the property damage claim and awarded Llego $2,801.54 in fees and $288.00 in costs associated with the motion to dismiss. In the order, the court found that Erum's cross-motion was untimely filed and that Llego had afforded Erum an opportunity to withdraw his claim with prejudice and Erum had not done so. The order did not include findings that Erum's cross-motion or mandamus petition

6

were frivolous or made in bad faith, nor did it cite the authority pursuant to which the sanctions were granted.

On December 8, 2016, Llego filed a motion to enforce settlement, or in the alternative, continue the trial (motion to enforce settlement). Llego also requested that the court award fees and costs incurred by defense counsel in conducting settlement negotiations and in making the motion to enforce settlement. In a declaration attached to his motion, Llego contended that the parties had reached a final settlement on November 9, 2016, but Erum had intentionally delayed execution of the settlement documents in bad faith. Llego maintained that the parties had agreed that Llego would pay Erum $16,000.00 in general damages, Llego would not pursue collection of any sanctions against Erum, Erum would sign a standard release and indemnity agreement and stipulation for dismissal with prejudice, and Erum would be responsible for any and all medical bills related to the automobile accident.

In the motion to enforce settlement, Llego stated that on November 9, 2016, defense counsel wrote a confirmatory letter to Erum setting forth the material terms of the settlement as outlined above, and a week later, he mailed settlement agreement documents to Erum. Llego further stated that Erum contacted defense counsel on November 29, 2016, to advise Llego that he

would not execute the documents as drafted because the agreement document released a party designated as "J's Taxi" whom Erum did not agree to release. According to Llego, Erum said that he would not release J's Taxi unless Erum received additional money in the settlement. Llego indicated that he obtained authority from the insurance carrier to remove J's Taxi from the agreement and so informed Erum, but Erum advised defense counsel that he would be visiting the doctor and might require future treatment, in which case Erum would want an additional amount to settle his case against Llego. Defense counsel stated that he continued to contact Erum to resolve the matter but that as of December 5, 2016, the parties had not reached agreement in the case.

On December 12, 2016, Erum filed an opposition to Llego's motion to enforce settlement in which he disputed Llego's contention that a final settlement had been reached and stated that the terms of the agreement as drafted by Llego's counsel were not, and had never been, acceptable to him. In his opposition, Erum maintained that during settlement negotiations he had informed defense counsel that he would not settle unless Llego agreed to pay for future medical treatment of his injuries arising from the automobile accident and to vacate the order and

final judgment awarding Llego attorneys' fees and costs.[5]  Erum

further asserted that he had contacted defense counsel on

November 29, 2016, to inform counsel that the documents as

drafted were not acceptable because he had not agreed to release

J's Taxi, the agreement did not provide for the vacatur of the

sanction award, and the agreement did not provide for the

payment of Erum's future medical expenses by Llego.

At a hearing held on December 13, 2016, the circuit

court denied Llego's motion to enforce the settlement and

granted the alternative motion to continue trial.  A written

order granting Llego's motion to continue was entered on January

27, 2017, in which the court stated that "[Defense counsel]'s

actions in the settlement negotiations with Plaintiff were made

in good faith.  The Court further finds that Plaintiff's actions

in the settlement negotiations were not made in good faith."  On

that basis, the court awarded sanctions against Erum for Llego's

attorneys' fees and costs associated with the unsuccessful

settlement negotiations.  The court did not conduct an

evidentiary hearing regarding the settlement negotiations or

make any findings of fact in the order that set forth the basis

---

[5]     The confirmatory letter sent to Erum by defense counsel did not refer to the release of J's Taxi or to vacating the awards of sanctions to Llego.  Instead, the letter stated Llego would not pursue collection of the sanctions.

for its determination that Erum negotiated in bad faith or that supported the granting of monetary sanctions. The court also did not cite the authority pursuant to which the sanction was awarded. Erum filed an opposition to the proposed award of attorneys' fees, maintaining that he had not negotiated in bad faith. On February 15, 2017, the court entered an order awarding Llego $4,577.04 in sanctions against Erum for the fees and costs incurred by Llego's counsel related to the unsuccessful settlement negotiation.

The court on January 6, 2017, filed an amended order setting the trial date for April 3, 2017, and providing dates for the submission of pretrial documents. Erum did not submit the pretrial documents by the applicable deadlines and instead, on February 27, 2017, filed a motion for continuance of trial. In a declaration attached to his motion, Erum stated that Llego had extended a settlement offer to him on February 15, 2017, that he had responded with a counteroffer on February 25, 2017, and that a settlement conference with the court was scheduled for March 24, 2017. In the event a settlement was reached, Erum stated, trial would no longer be required. Additionally, Erum stated that if the settlement negotiations failed, he intended to retain a personal injury attorney to represent him at trial. The requested continuance, Erum stated, would enable such

10

counsel to prepare for trial and submit the requisite pretrial documents in compliance with the various deadlines.

On March 3, 2017, Llego filed a motion to dismiss or in the alternative to exclude all of Erum's pretrial documents that were not filed by the deadlines set out in the amended order. In his motion, Llego argued that the fact that the parties were engaged in settlement negotiations did not excuse Erum from submitting his pretrial documents by the applicable deadlines. Two weeks later, Llego filed an opposition to Erum's motion to continue, in which he incorporated by reference his motion to dismiss or in the alternative to exclude Erum's pretrial documents. Erum filed an opposition to Llego's motion to dismiss on March 22, 2017, stating that he expected that the continuance of trial would also extend the due date for pretrial documents and further that dismissal with prejudice was unwarranted because there was no showing of deliberate delay, contumacious conduct, or prejudice to Llego.[6]

At the hearing on Llego's motion to dismiss, held on April 18, 2017, at 1:00 p.m., the court denied Llego's motion to dismiss or in the alternative to exclude Erum's pretrial

_____

[6] At a hearing on March 23, 2017, the court took the trial off calendar and continued the motion to dismiss in order for the court to determine how the case would proceed in light of Erum's filing of a bankruptcy petition on March 16, 2017.

11

documents. The court continued the trial to September 18, 2017, and orally informed the parties that the pretrial conference would take place on August 24, 2017. In a written order entered on May 19, 2017, the court stated that it had reviewed the pleadings and heard oral argument and was denying Llego's motion on that basis. The court nevertheless awarded Llego fees and costs related to his motion to dismiss.

A settlement conference was scheduled on the same day as the hearing on Llego's motion to dismiss, April 18, 2017, at 4:00 p.m. Although Erum appeared at the hearing held at 1:00 p.m., when he did not appear at the settlement conference later that afternoon, Llego orally moved to dismiss the case for failure to prosecute. The court stated that it would not grant an oral motion but would allow Llego to file a written motion.

On May 11, 2017, Llego filed a motion to dismiss the case with prejudice, asserting that Erum's failure to appear at the settlement conference was a deliberate, contumacious delay that prejudiced him because it cost him and his counsel significant time and resources. Erum filed a memorandum in opposition to the motion on May 24, 2017. In a declaration attached to his memorandum in opposition, Erum averred that on April 18, 2017, at about 3:00 p.m., shortly before the settlement conference was to be held, he suffered an onset of

12

atrial fibrillation.  Erum stated in his declaration that he is 84 years old and suffers from multiple illnesses, one of which is sporadic atrial fibrillation.  Sporadic atrial fibrillation, Erum stated, can lead to a stroke, heart attack, or heart failure unless treated.  Because his attention was solely directed to treating his illness, he inadvertently failed to attend the settlement conference on April 18, 2017, Erum explained.[7]

A hearing was held on June 1, 2017, in which the court denied Llego's motion to dismiss but again awarded Llego fees and costs incurred in making the motion.  In total, Llego received five awards of sanctions throughout the course of litigation (collectively, monetary sanction orders).  The record

---

[7]   Erum's declaration states as follows:

I am 84 years old.  My illnesses include sporadic atrial fibrillation (fibrillation of the atrium chamber of the heart), which could lead to a stroke, heart attack or heart failure unless attended to by the restoration of a normal heartbeat by medication or electro-cardio conversion. At about 3 p.m. on April 18, 2017, shortly before a settlement conference was to [be] held by the Court, as earlier announced by the Court during a 1 p.m. hearing on the same day, I suffered an onset of atrial fibrillation, which is one of my illnesses.  Because this illness required immediate attention, I immediately drove home to obtain my medication (Amiodarone 200 mg.) for its treatment.  Because my immediate attention was solely directed to treating this illness to avoid any life threatening consequences for not doing so, I inadvertently overlooked and failed to comply with the Court's requirement that I attend the subject settlement conference.

13

contains judgments for the first three awards, the respective

amounts of which were $3,280.19, $3,089.54, and $4,577.04 for a

total of $10,946.77.[8]

In imposing the sanctions with regard to the May 11,

2017 motion to dismiss, the court again did not cite the

authority under which the sanction was made, nor did it find

that Erum had acted in bad faith by failing to attend the

settlement conference.  At the hearing, Llego asked the court to

order Erum to file his pretrial documents by a date certain to

avoid prejudicing Llego, but Erum indicated that he did not

intend to file any pretrial documents for strategic reasons.

The court apparently did not consider Erum's decision not to

file pretrial documents problematic or a rule violation.[9]

---

[8]     The monetary sanction orders include the following: (i) Order Re: Defendant Josue Bumatay Llego's Motion For Dismissal With Prejudice For Failure To Prosecute Case, entered on May 13, 2016; (ii) Order 1) Granting Defendant Josue Bumatay Llego's Motion To Dismiss With Prejudice Plaintiff's Property Damage Claim; And 2) Order Denying Plaintiff Theodorico Erum's Cross Motion To Continue Hearing on Defendant Josue Bumatay Llego's Motion To Dismiss with Prejudice Plaintiff's Property Damage Claim, entered on December 2, 2016; (iii) Order Granting In Part And Denying In Part Defendant Josue Bumatay Llego's Motion to Enforce Settlement Or In The Alternative For Continuation Of Trial, entered on January 27, 2017; (iv) Order Denying Josue Bumatay Llego's Motion To Dismiss Case With Prejudice Or In The Alternative To Exclude All Of Plaintiff's Pre-trial Documents That Were Due Under The January 6, 2017 Amended Order Filed On March 3, 2017, entered on May 19, 2017; (v) and Order Denying Defendant Josue Bumatay Llego's Motion For Dismissal With Prejudice Filed on May 11, 2017, entered on July 18, 2017.

[9]     The court responded to Erum's statement that he did not intend to file pretrial documents by asking Llego's counsel to include Erum's statement in the order denying Llego's motion to dismiss.

On August 24, 2017, the day of the calendared pretrial conference, Erum did not appear.  Llego made an oral motion to dismiss the case, although there was no in-court proceeding scheduled and Erum was not present.  The court nonetheless granted Llego's oral motion to dismiss with prejudice, and trial in the case was taken off calendar.  At the time the court dismissed the case, seven months and one week had elapsed from the original trial date.  The trial date had been continued twice: once at the request of Llego because settlement negotiations had broken down; and the second time at the request of Erum because the parties had re-entered settlement negotiations and a settlement conference was scheduled with the court.  On September 13, 2017, Erum, apparently unaware that the court had already granted Llego's oral motion to dismiss, submitted an "Emergency Ex Parte Motion to Reschedule Trial" (emergency motion) and moved for the trial to be continued and rescheduled

> so as to allow sufficient time for the Court to consider the Defendant's apparent request for dismissal of this action, which should be made by the Defendant by written motion, as well as to allow sufficient time for Plaintiff to respond to such motion.

On September 15, 2017, the court issued an Order Granting Llego's Oral Motion for Dismissal with Prejudice (Dismissal Order).  The Dismissal Order indicated that Erum was not present at the pretrial conference on August 24, 2017, which

15

he had been orally instructed to attend by the court at the hearing on April 18, 2017.[10]  The Dismissal Order also noted that the motion to dismiss was brought pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rules 16 and 37, but it did not state the rule(s) on which the oral motion to dismiss was granted.  The Dismissal Order instead stated that the court's decision was made after "review[ing] the pleadings, consider[ing] the entire case record, and hear[ing] oral argument."  The same day, the court summarily stamped "Denied" on Erum's emergency motion.

On September 27, 2017, a Judgment Re: Order Granting Defendant Josue Bumatay Llego's Oral Motion for Dismissal with Prejudice (circuit court judgment) was filed, dismissing the case with prejudice pursuant to the oral motion to dismiss "heard on August 24, 2017."  On October 10, 2017, Erum filed a Motion to Set Aside Judgment of Dismissal and to Reschedule Trial Without Further Pretrial Conferences (motion to set aside).  In a declaration attached to his motion to set aside, Erum averred that he inadvertently did not attend the August 24,

---

[10]    The Dismissal Order states that "On April 18, 2017, the Court orally ordered the parties to appear for the August 24, 2017 pre-trial conference."  Other than the court's oral instruction to Erum at the hearing on April 18, 2017, which was the same day he suffered a debilitating medical episode that prevented him from attending an afternoon settlement conference, there is no indication in the record that Erum was given any other instruction regarding the August 24, 2017 pretrial conference.

16

2017 pretrial conference due to memory lapses and mental confusion associated with his age of 85 and the side effects of medications taken for his illnesses.[11]  Erum contended that there was "no evidence in the record or offered by Llego in his oral motion which shows that Erum's failure to attend that pretrial conference was contumacious conduct (willful resistance to authority) or was deliberately made by Erum to delay the prosecution of this case."  Erum further stated that "it was erroneous for the trial court to enter such judgment of dismissal with prejudice without notice to Erum and without a written motion and a hearing."  On October 27, 2017, Llego filed an opposition to Erum's motion.  Also on October 27, 2017, Erum filed a Notice of Appeal, appealing from the circuit court judgment and the Dismissal Order.  On December 5, 2017, the court denied Erum's motion to set aside, concluding that it

---

[11]     The declaration states in full as follows:

> I, the undersigned, am the plaintiff in this case.  I am 85 years old and suffer from memory lapses and mental confusion associated with my elderly age and which are also the side effects of medications which I take for my illnesses, which include, sporadic atrial fibrillation (i.e. irregular heartbeat of the atrial chamber of the heart), hypertension (i.e. high blood pressure), abdominal hernia (i.e. protrusion of the abdominal wall), and gout (i.e., inflammation of the joint.  As a result of these medical conditions, I mistakenly failed to calendar and thus mistakenly failed to remember and attend the pretrial conference held by the Court in this case on August 24, 2017.

17

lacked jurisdiction over the matter since Erum had filed a

Notice of Appeal.[12]

## B.    ICA Proceedings

In a Summary Disposition Order (SDO), the Intermediate

Court of Appeals (ICA) concluded that the circuit court did not

abuse its discretion in granting Llego's oral motion to

dismiss.[13]  The ICA stated that, throughout the case, Erum

"missed deadlines, refused to voluntarily dismiss the property

damage claim . . . was found not to have conducted settlement

negotiations in good faith, failed and refused to submit

pretrial documents . . . and failed to attend court-ordered

---

[12]    After filing his Notice of Appeal, Erum filed a declaration in support of his request to proceed in forma pauperis.  Erum stated that he was unable to pay the costs for proceedings or give security because of his poverty.  Specifically, Erum related that he received $453.00 monthly in social security payments and had less than $10.00 in his checking and savings accounts.  Erum also stated that he was receiving monthly rental payments from properties, but that those properties were in foreclosure.  Erum's request to proceed in forma pauperis was approved.
        The dissent concludes Erum made his declaration in bad faith and that it demonstrates his willingness to "make false statements to the court for financial gain."  Dissent at 23 n.14.  This breathtaking accusation is inferred from a statement in Erum's declaration that his last employer was the United States Air Force.  During his deposition, Erum had stated that he served six years in the Air Force after attending college, spent another year and a half in school, and then between 1958 and 1960 spent about a year and a half working for a bank and the federal government.  He was subsequently self-employed for the rest of his career.  Erum's statement that the Air Force was his last employer rather than the federal government, which related to employment 55 years earlier, does not warrant the accusation leveled by the dissent.  Moreover, the dissent does not explain how this "false statement" could have benefitted Erum's application to proceed in forma pauperis.  The dissent's attack on Erum's character is unjustified.

[13]    The ICA's SDO can be found at Erum v. Llego, No. CAAP-17-0000762, 2019 WL 1923002 (App. Apr. 30, 2019) (SDO).

conferences." (Footnote omitted.) The ICA further noted that the circuit court had awarded monetary sanctions against Erum five times prior to dismissing the case and that Erum had offered no reason for his failure to attend the final pretrial conference on August 24, 2017. The ICA, citing Webb v. Harvey, 103 Hawai'i 63, 79 P.3d 681 (App. 2003), concluded that the circuit court did not abuse its discretion in dismissing Erum's case based on the record.

## II. STANDARDS OF REVIEW

Sanctions imposed under statute, court rule, or the trial court's inherent powers are reviewed for an abuse of discretion. Gap v. Puna Geothermal Venture, 106 Hawai'i 325, 331, 104 P.3d 912, 918 (2004). The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Id.

When interpreting rules promulgated by the court, principles of statutory construction apply. Bank of Am., N.A. v. Reyes-Toledo, 143 Hawai'i 249, 257, 428 P.3d 761, 769 (2018) (quoting Ranger Ins. Co. v. Hinshaw, 103 Hawai'i 26, 30, 79 P.3d 119, 123 (2003)). Interpretation of a statute is a question of law which we review de novo. Id.

19

## III. DISCUSSION

### A. HRCP Rule 7(b)(1) Requires that All Motions Be Made in Writing Properly Served on the Opposing Party Unless the Motion Is Made During a Hearing or Trial.

HRCP Rule 7(b) (2000)[14] governs the manner in which motions must be made before the trial court. HRCP Rule 7(b)(1) requires that all motions be made in writing unless the motion is made during a hearing or trial. See also Cooke Tr. Co. v. Chinn Ho, 43 Haw. 243, 245 (Haw. Terr. 1959) (per curiam) (granting a motion to dismiss an appeal for non-compliance with HRCP Rule 7(b)(1) because the oral motion seeking allowance of an interlocutory appeal was not made during a hearing or trial).

Llego made an oral motion to dismiss the complaint during a pretrial conference where he was the only party present. HRCP Rule 16(c) (2000) sets out the subjects for consideration at a pretrial conference. Of the sixteen enumerated subjects, the only one concerning motions is HRCP Rule 16(c)(11), which states that "consideration may be

---

[14] HRCP Rule 7(b) states in relevant part as follows:

(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

(Emphasis added.)

given . . . [to] the disposition of <u>pending</u> motions[.]" (Emphasis added.)  No motions were pending in this case when the pretrial conference began.  As such, the pretrial conference was not a "hearing" for the purposes of satisfying HRCP Rule 7(b)(1)'s requirement that motions be made in writing unless made during a hearing or trial.

The writing requirement of HRCP Rule 7(b)(1)[15] was addressed in <u>Benezet v. Nowell</u>, 42 Haw. 581 (Haw. Terr. 1958).  In that case, the plaintiff made an oral motion, in open court, to reopen a case for the introduction of additional evidence.  <u>Id.</u> at 582.  After hearing arguments from both parties, the trial court granted the motion.  <u>Id.</u>  On appeal, the <u>Benezet</u> court affirmed the trial court's granting of the motion, stating that although the motion was not made in writing, it was made in open court at a hearing at which opposing counsel was present.  <u>Id.</u> at 584.  Since the defendant received notice of the hearing, appeared at the hearing, and made oral argument on the motion,

_____

[15]    The court in <u>Benezet</u> quotes HRCP Rule 7(b)(1) as follows:

> This rule provides "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought.  The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion."

42 Haw. at 584.  This language is identical to HRCP Rule 7(b)(1) (2000).

the court stated, the purposes of the writing requirement were satisfied.  Id.

Unlike the defendant in Benezet, Erum was not present at the August 24, 2017 pretrial conference when Llego moved to dismiss Erum's case.  And because he was not present at the pretrial conference and no written motion was filed, Erum did not receive a pleading that "state[d] with particularity the grounds therefor, and . . . set forth the relief or order sought" as required by HRCP Rule 7(b)(1).

Erum was also not given notice of the motion as specified by HRCP Rule 5(a) (2000),[16] which requires service of motions.  Instead, the court heard argument from Llego's counsel on the ex parte motion at the pretrial conference and summarily granted the motion with prejudice, contrary to the requirement that notice of the motion and its grounds be given to Erum

---

[16]     HRCP Rule 5(a) states in relevant part as follows:

Every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, brief or memorandum of law, offer of judgment, bill of costs, designation of record on appeal, and similar paper shall be served upon each of the parties[.]

(Emphases added.)

before consideration of the motion.  Erum argued to the circuit court that Llego's motion to dismiss should have been made in writing and in a manner that allowed Erum an opportunity to respond, which is precisely what is required by HRCP Rule 7(b)(1).

We note, however, that Erum's application for certiorari, which is only one page in length, does not include as a question presented the court's failure to comply with HRCP Rule 7(b)(1) and, in fact, does not contain a section setting forth questions presented; thus the application contravenes Hawai'i Rules of Appellate Procedure (HRAP) Rule 40.1(d) (2017).[17] A strict application of HRAP Rule 40.1(d) would require that Erum's application for writ of certiorari be disregarded unless plain error was to be invoked.  But such an application of the rule would contravene a fundamental tenet of our law: "pleadings

---

[17]     HRAP Rule 40(d)(1) provides as follows:

(d) Contents. The application for a writ of certiorari shall not exceed 12 pages and shall contain in the following order:

(1) A short and concise statement of the questions presented for decision, set forth in the most general terms possible.  The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein. Questions not presented according to this paragraph will be disregarded.  The supreme court, at its option, may notice a plain error not presented.

(Emphasis added.)

prepared by pro se litigants should be interpreted liberally." Waltrip v. TS Enters., Inc., 140 Hawai'i 226, 239, 398 P.3d 815, 828 (2016) (brackets omitted) (quoting Dupree v. Hiraga, 121 Hawai'i 297, 314, 219 P.3d 1084, 1101 (2009)).  Underlying this principle of law is "the promotion of equal access to justice--a pro se litigant should not be prevented from proceeding on a pleading or letter to an agency if a reasonable, liberal construction of the document would permit him or her to do so." Id. (citing, inter alia, Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants") (citing Boag v. MacDougall, 454 U.S. 364, (1982) (per curiam))).

Liberal interpretation of a pro se litigant's application for writ of certiorari is consistent with this court's and the ICA's holdings that a pro se litigant's failure to state the alleged errors of the lower court in precise compliance with HRAP Rule 28(b) (2016)[18] will not foreclose

---

[18]     HRAP Rule 28(b) provides in relevant part as follows:

Within 40 days after the filing of the record on appeal, the appellant shall file an opening brief, containing the following sections in the order here indicated:

. . . .

(continued. . .)

consideration of the appeal, so long as the litigant's argument can reasonably be discerned. Housing Fin. & Dev. Corp. v. Ferguson, 91 Hawai'i 81, 85-86, 979 P.2d 1107, 1111-12 (1999) (addressing an appeal on the merits despite the fact that the opening brief fell "woefully short" of the requirements of HRAP Rule 28(b) and did not state the points of error alleged or where in the record the errors occurred and contained a one-sentence statement of the case); In re Estate of Damon, 119 Hawai'i 500, 503-04, 199 P.3d 89, 92-93 (2008) (addressing the merits of one of appellants arguments despite the fact that the citation for the relevant point of error was located in the statement of the case); Wagner v. World Botanical Gardens, Inc., 126 Hawai'i 190, 193, 268 P.3d 443, 446 (App. 2011) (addressing arguments raised on appeal by a pro se litigant "to the extent

---

(. . .continued)

(4) A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency. . . .

. . . .

Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented. . . .

they can reasonably be discerned" although finding that the opening brief did not meet the requirements of HRAP Rule 28(b) in a variety of ways); see also Tautua v. BCI Coca-Cola Bottling Co., No. 30291, 2012 WL 2308162 (App. June 18, 2012) (SDO) (addressing points of error "to the extent that they can be discerned" because appellant had not included points of error in the opening brief).  This approach is particularly appropriate when, despite failing to articulate points of error on appeal, "the remaining sections of the brief provide the necessary information to identify the party's argument" and "petitioner had raised the same argument before the trial court."  Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012).

This court additionally has long adhered to the policy of affording litigants the opportunity to be heard on the merits whenever possible.  Morgan v. Planning Dep't, 104 Hawai'i 173, 180-81, 86 P.3d 982, 989-90 (2004) (quoting O'Connor v. Diocese of Honolulu, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994)).  In view of this longstanding policy, we believe that pro se litigants should not automatically have their access to appellate review in this court foreclosed because of failure to conform to requirements of the procedural rules.  See id. Indeed, we have instructed the lower courts to liberally interpret the filings of pro se litigants if possible, and this

court is equally obligated to interpret applications for certiorari liberally in order to facilitate access to justice. Waltrip, 140 Hawai'i at 240, 398 P.3d at 829.

In the statement of the case of his application, Erum contends that when he mistakenly failed to attend a pretrial conference, "the circuit court granted an oral motion by Llego to dismiss the case with prejudice without a hearing which the circuit court granted."  The argument paragraph is only four sentences and states that the dismissal was inconsistent with our holding in In re Blaisdell, 125 Hawai'i 44, 252 P.3d 63 (2011), and this court's policy of having cases heard on the merits when possible.  In addition to the statements in the application, Erum argued in his emergency motion that continuing the trial would allow the circuit court sufficient time to consider Llego's apparent request to dismiss the action, "which should be made by the Defendant by written motion, as well as to allow sufficient time for Plaintiff to respond to such motion." In his motion to set aside, Erum contended that there was "no evidence in the record or offered by Llego in his oral motion which shows that Erum's failure to attend that pretrial conference was contumacious conduct (willful resistance to authority) or was deliberately made by Erum to delay the prosecution of this case."  Erum further stated that "it was

erroneous for the trial court to enter such judgment of dismissal with prejudice without notice to Erum and without a written motion and a hearing."  In his opening brief before the ICA, Erum simply identifies the court's granting of Llego's oral motion to dismiss with prejudice as the point of error on appeal.

Thus, liberally construing Erum's application for certiorari, we discern from it, as informed by the arguments Erum made before the trial court, that the following questions are presented (1) whether the granting of an oral motion to dismiss with prejudice, without a hearing, was a proper exercise of the court's discretion; and (2) whether the circuit court abused its discretion in dismissing the case with prejudice under our holding in Blaisdell.

Because of our disposition of the other issue Erum raises, it is unnecessary to further address the violation of HRCP Rule 7(b) in this case.[19]  Nevertheless, because of the

---

[19]    The dissent argues that our consideration of the court's noncompliance with HRCP Rule 7(b) is an improper exercise of plain error review because the rule was not specifically referred to in the application. Dissent at 24 (citing HRAP Rule 28(b)(4) (2016)).  The contention is inapposite because we do not consider this issue under the plain error doctrine.  The dissent further contends that our consideration of the issue disregards the "principle of party presentation."  Dissent at 32.  As explained, under fundamental principles of this jurisdiction, pro se pleadings are to be read liberally, and we conclude that under our precedent this issue was adequately raised.  The inapt application of the "principle of party presentation" to this case is demonstrated by the case relied upon by

(continued. . .)

importance of the requirements of HRCP Rule 7(b), we reaffirm that a motion must be made in writing and in compliance with other provisions of HRCP Rule 7(b) and relevant court rules, unless the motion is made at a hearing or trial.[20]

**B.    The Circuit Court Abused Its Discretion in Entering the Dismissal Order Without Making Any Findings of Deliberate Delay or Contumacious Conduct and Actual Prejudice and by Failing to Explain Why Lesser Sanctions Were Inadequate.**

It is well established that the involuntary dismissal of a complaint with prejudice is such a severe sanction that it "should be ordered only in extreme circumstances."  Blaisdell, 125 Hawai'i at 49, 252 P.3d at 68 (emphasis added); see also Shasteen, Inc. v. Hilton Hawaiian Vill. Joint Venture, 79 Hawai'i

_____

(. . .continued)

the dissent.  Dissent at 29 (quoting United States v. Sineneng-Smith, 140 S.Ct. 1575, 1579 (2020) (holding that the Ninth Circuit violated the party presentation principle by sua sponte naming and inviting three amici to brief and argue issues framed by the appeals panel after oral argument had been concluded).  Further, the party presentation doctrine is generally not controlling in circumstances of a pro se litigant.  Castro v. Melchor, 142 Hawai'i 1, 19, 414 P.3d 53, 71 (2018) (Nakayama, J., concurring) (stating that under the "principle of party presentation" courts hesitate to consider issues not raised by the parties "because our system assumes and depends upon the assistance of counsel." (emphasis added) (quoting United States v. Pryce, 938 F.2d 1343, 1353 (D.C. Cir. 1991) (Silberman, J., dissenting))).

[20]    We also observe that the circuit court's consideration and granting of Llego's oral motion to dismiss without notice to Erum raises serious constitutional due process considerations.  The fundamental requirements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner.  Minton v. Quintal, 131 Hawai'i 167, 189, 317 P.3d 1, 23 (2013); see also In re Application of Maui Elec. Co., 141 Hawai'i 249, 269, 408 P.3d 1, 21 (2017).  Constitutionally adequate notice must inform affected parties of the action about to be taken against them as well as of procedures available for challenging that action.  Brown v. Thompson, 91 Hawai'i 1, 10, 979 P.2d 586, 595 (1999).

103, 107, 899 P.2d 386, 390 (1995) ("[D]ismissal of a complaint is such a severe sanction, that it should be used only in extreme circumstances where there is clear record of delay or contumacious conduct . . . ." (quoting Lim v. Harvis Constr., Inc., 65 Haw. 71, 73, 647 P.2d 290, 292 (1982))). As this court stated in Blaisdell, there are only two circumstances in which a trial court may, in its sound discretion, dismiss a claim with prejudice. 125 Hawai'i at 49-50, 252 P.3d at 68-69. Dismissal with prejudice is not an abuse of discretion when a plaintiff's deliberate delay or contumacious conduct causes actual prejudice.[21] Chen v. Mah, 146 Hawai'i 157, 179-80, 457 P.3d 796, 818-19 (2020). Additionally, because the sanction of dismissal with prejudice is one of last resort, it may be invoked only

---

[21] The dissent argues that we are "expand[ing] upon Blaisdell's standard for involuntary dismissals pursuant to HRCP Rule 41(b), and creat[ing] an even higher standard." Dissent at 39. Specifically, the dissent contends that under Blaisdell the court could dismiss a case if the record merely showed that the defendant suffered actual prejudice, without any need to consider deliberate delay or contumacious conduct. Dissent at 40. First, the dissent appears to overlook Chen, wherein this court recently considered Blaisdell as well as other relevant precedent that reached the conclusions we reiterate today. 146 Hawai'i at 179-80, 457 P.3d at 818-19. Moreover, the dissent would allow dismissal with prejudice solely based on a showing that the defendant suffered actual prejudice, without any causal connection to the plaintiff's conduct. Dissent at 40-41. But "[p]roof of [prejudice] in the air, so to speak, will not do." Martin v. Herzog, 126 N.E. 814, 816 (N.Y. 1920). There must be a causal connection between the plaintiff's conduct and the defendant's actual prejudice in order for dismissal with prejudice to be warranted. Blaisdell, 125 Hawai'i at 49-50, 252 P.3d at 68-69 ("A dismissal with prejudice would not constitute an abuse of discretion where a plaintiff's deliberate delay causes actual prejudice to a defendant.").

when the actual prejudice cannot be addressed through lesser sanctions. Id. Therefore, we have stated that before dismissing a case with prejudice the trial court is to consider less severe sanctions and state why a lesser sanction "is insufficient to serve the interests of justice." Id. at 180 n.29, 457 P.3d at 819 n.29 (citing Blaisdell, 125 Hawai'i at 50-51, 252 P.3d at 69-70).

Llego contends that the foregoing precedents do not apply to this case because the circuit court dismissed Erum's claim as a sanction under HRCP Rules 16(f) (2000) and 37(b)(2)(C) (2015),[22] and Blaisdell involved a dismissal pursuant to HRCP Rule 41(b) (2012).[23] First, we note that the circuit

---

[22] HRCP Rule 16(f) (2000) states as follows:

> If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

HRCP Rule 37(b)(2)(C) (2015), in turn, permits an order dismissing the action or proceeding or any part thereof.

[23] HRCP Rule 41(b) states in relevant part as follows:

(continued. . .)

court did not cite any rule as authority in its Dismissal Order. But even if it had referenced HRCP Rule 16(f), the preconditions for a valid dismissal set forth in Blaisdell result from the severity of the sanction of dismissal itself, not from the dismissal in that case being based on HRCP Rule 41(b). See Blaisdell, 125 Hawai'i at 49, 252 P.3d at 68 ("[T]he sanction of dismissal of a complaint with prejudice is one of last resort where lesser sanctions would not serve the interest of justice. . . . [And] an order of dismissal cannot be affirmed absent deliberate delay, contumacious conduct, or actual prejudice." (citation and brackets omitted)). The Blaisdell court did not limit the standard it articulated to dismissals pursuant to HRCP Rule 41(b); in fact this court has previously applied the Blaisdell standard to cases dismissed with prejudice pursuant to Rule 12 of the Rules of the Circuit Courts of the State of Hawai'i (RCCH). See Bagalay v. Lahaina Restoration Found., 60 Haw. 125, 132, 588 P.2d 416, 421 (1978) (concluding that caselaw analyzing dismissals pursuant to HRCP Rule 41(b) is applicable

_____

(. . .continued)

> (b) Involuntary dismissal: Effect thereof. (1) For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against it.

to a dismissal pursuant to RCCH Rule 12(f));[24] Phillips v.
Brisebois, 72 Haw. 146, 148, 808 P.2d 370, 371 (1991) (per
curiam) ("[RCCH] Rule 12(b)(6) dismissal is subject to the same
analysis as in Bagalay.").[25]  Additionally, by its own language,
HRCP Rule 41(b)(1) authorizes a motion for involuntary dismissal
based on failure to comply with any of the rules of civil
procedure or a court order.  See HRCP Rule 41(b)(1) ("For

[24]    At the time of this court's decision in Bagalay, RCCH Rule 12(f)
provided as follows:

> Where no statement of readiness had been filed within one
> year after a complaint has been filed or within any
> extension granted by the court, the clerk shall notify in
> writing all parties affected thereby that the case will be
> dismissed for want of prosecution unless objections are
> filed within 10 days after receipt of such notice.  If
> objections are not filed within said 10-day period or any
> extension granted by the court, the case shall stand
> dismissed with prejudice without the necessity of an order
> of dismissal being entered therein.  Where objections are
> filed within said 10-day period or any extension granted by
> the court, the court shall hear said objections upon notice
> and determine whether the case should be dismissed.

Bagalay, 60 Haw. at 128 n.1, 588 P.2d at 419 n.1.

[25]    RCCH Rule 12(b)(6) provided at the time in relevant part as
follows:

> Dismissal for Want of Prosecution. Where no statement of
> readiness has been filed within one year after a complaint
> has been filed . . ., the clerk shall notify in writing all
> parties affected thereby that the case will be dismissed
> for want of prosecution unless objections thereto showing
> good cause (specific reasons) are filed within 10 days
> after receipt of such notice. . . .  Where objections are
> filed within said 10-day period or any extension granted by
> the court, the court shall hear said objections upon notice
> and determine whether the case should be dismissed.

Phillips, 72 Haw. at 147, 808 P.2d at 371 (alterations in original) (emphasis
omitted).

failure of the plaintiff to prosecute <u>or to comply with these rules or any order of the court</u>, a defendant may move for dismissal of an action or of any claim against it." (emphasis added)).  The general authorization to dismiss a case under HRCP Rules 16(f) and 37(b)(2)(C) for a violation of provisions relating to pretrial conferences does not allow a court to bypass the requirements integrated into HRCP Rule 41(b) by <u>Blaisdell</u> and other precedent of this court, which are expressly applicable to a failure "to comply with these [HRCP] rules or any order of the court."

Further, limiting the application of the <u>Blaisdell</u> factors only to those dismissal orders entered under HRCP Rule 41(b) would produce an inconsistent application of our court rules.  See <u>Ryan v. Palmer</u>, 130 Hawai'i 321, 323, 310 P.3d 1022, 1024 (App. 2013) (finding that it was abuse of discretion to dismiss under RCCH Rule 12(q) absent deliberate delay, contumacious conduct, or actual prejudice because allowing such dismissal would put RCCH Rule 12(q) and HRCP Rule 41(b) into conflict "by expanding the circuit court's authority beyond that which it possesses under HRCP Rule 41(b)"); <u>see also</u> <u>Bagalay</u>, 60 Haw. at 132, 588 P.2d at 421.  Significantly, there are numerous other rules or statutes under which a circuit court may impose the sanction of dismissal with prejudice.  See, e.g., Hawai'i

34

Revised Statutes (HRS) § 635-3 (2016);[26] HRCP Rule 16(f), Rule

37(b)(2)(C), Rule 41(b); RCCH Rule 12(q) (2007),[27] Rule

12.1(a)(6) (2000),[28] Rule 28 (2007),[29] Rule 29 (2007).[30]  The

---

[26]    HRS § 635-3 provides in relevant part as follows: "The court may dismiss any action for want of prosecution after due notice to the claimants whenever claimants have failed to bring such action to trial within a period established by rule of court."

[27]    RCCH Rule 12(q) states as follows:

An action may be dismissed sua sponte with written notice to the parties if a pretrial statement has not been filed within 8 months after a complaint has been filed (or within any further period of extension granted by the court) or if a trial setting status conference has not been scheduled as required by Rule 12(c).  Such dismissal may be set aside and the action reinstated by order of the court for good cause shown upon motion duly filed not later than ten (10) days from the date of the order of dismissal.

[28]    RCCH Rule 12.1(a)(6) provides in relevant part as follows:

The failure of a party or his attorney to appear at a scheduled settlement conference, the neglect of a party or his attorney to discuss or attempt to negotiate a settlement prior to the conference, or the failure of a party to have a person authorized to settle the case present at the conference shall, unless a good cause for such failure or neglect is shown, be deemed an undue interference with orderly procedures.  As sanctions, the court may, in its discretion:

(i) Dismiss the action on its own motion, or on the motion of any party or hold a party in default, as the case may be[.]

[29]    RCCH Rule 28 provides as follows:

A diligent effort to effect service shall be made in all actions.  An action or claim may be dismissed sua sponte with written notice to the parties if no service is made within 6 months after the action or claim has been filed.  Such dismissal may be set aside and the action or claim reinstated by order of the court for good cause shown upon motion duly filed not later than ten (10) days from the date of the order of dismissal.

District Court Rules of Civil Procedure and the Hawai'i Family Court Rules contain similar provisions. Applying different legal standards to similar conduct--based on different rules--when the rules impose the same sanction of dismissal with prejudice undermines the equitable application of the law, complicates appellate review, and produces outcomes that turn not on the merits but on the litigants' skill in procedural navigation.[31] Thus, our decisions interpreting HRCP Rule 41 and

_____

(. . .continued)

[30]    RCCH Rule 29 provides as follows:

> An action may be dismissed with prejudice sua sponte with written notice to the parties for want of prosecution where all defendants are in default and if the plaintiff fails to obtain entry of default and fails to apply for default judgment within six months after all defendants are in default. Such dismissal may be set aside and the action reinstated by order of the court for good cause shown upon motion duly filed not later than ten (10) days from the date of the order of dismissal.

[31]    In its SDO, the ICA did not address Erum's contention that the circuit court was required to apply the Blaisdell factors and instead cited Webb v. Harvey, 103 Hawai'i 63, 79 P.3d 681 (App. 2003), to support its holding that the circuit court did not abuse its discretion in dismissing Erum's case with prejudice. Insofar as Webb stands for the proposition that a dismissal with prejudice may be affirmed absent deliberate delay or contumacious conduct causing actual prejudice, it was implicitly overruled by Blaisdell.

The dissent maintains that HRCP Rule 16(f) is excepted from the preconditions for a valid dismissal set forth in Blaisdell, but HRCP Rule 16 does not state that it is excepted from HRCP Rule 41(b)(1). Dissent at 38-39. Rather, HRCP Rule 41(b) specifically provides that its provisions apply to all the rules of civil procedure and court orders. HRCP Rule 41(b)(1) ("For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal." (emphases added)). As stated, the general ability to dismiss under HRCP Rules 16(f) and 37(b)(2)(C), which relates solely to pretrial conferences, does not allow the court to bypass the requirements integrated into HRCP Rule 41(b) by

(continued. . .)

36

discussing involuntary dismissal pursuant to that rule are applicable to the involuntary dismissal in this case.[32]

### 1. Deliberate Delay

Dismissal with prejudice does not constitute an abuse of discretion when a plaintiff's deliberate delay causes actual prejudice to a defendant that cannot be addressed through a

---

(. . .continued)

Blaisdell and other precedent of this court.  HRCP Rule 41(b) applies to any dismissal for failure to comply with court rules or orders of the court.  The dissent provides no adequate justification for distinguishing dismissals based on the specific underlying rule violation, particularly when that rule violation is expressly subject to the general rule governing involuntary dismissals.

[32]    The dissent asserts that we are improperly "import[ing] the standard for an involuntary dismissal pursuant to HRCP Rule 41(b), as set forth in Blaisdell."  Dissent at 38.  As stated, our caselaw has clearly established for over forty years that the standard we apply today is not limited to involuntary dismissals entered under HRCP Rule 41(b).  Bagalay, 60 Haw. at 132, 588 P.2d at 421; Phillips, 72 Haw. at 147, 808 P.2d at 371.  Indeed, the dismissal in Blaisdell was not specifically entered under HRCP Rule 41(b), the circuit court in that case failed to cite the authority for its dismissal of Blaisdell's claims with prejudice.  125 Hawai'i at 47, 252 P.3d at 66.  On appeal, this court concluded that Blaisdell had violated HRCP Rule 4, which governs service of process, and therefore the court had authority to dismiss the case pursuant to HRCP Rule 41(b)(2).  Id. at 48-49, 252 P.3d at 67-68.  We further note that the ICA has commonly applied the Blaisdell standard in a wide variety of circumstances involving violations of court rules or court orders.  See Middleton v. Dep't of Human Servs., No. CAAP-13-0002468, 2017 WL 663538 (App. Feb. 17, 2017) (mem.) (applying the Blaisdell standard to a dismissal entered pursuant to HRCP Rule 72); Durda v. Ion Genius, Inc., No. CAAP-13-0000420, 2017 WL 621277 (App. Feb. 15, 2017) (mem.) (applying the Blaisdell standard to dismissal where trial court did not identify authority pursuant to which dismissal was entered); Rapoza v. Soares, No. CAAP-16-0000678, 2020 WL 354759 (App. Jan. 21, 2020) (SDO) (same); Poe v. City & Cty. of Honolulu, No. CAAP-16-0000624, 2019 WL 762590 (App. Jan. 30, 2019) (SDO) (applying the Blaisdell standard to a dismissal entered pursuant to Rules of the Tax Appeal Court Rule 29 and HRCP Rule 41(b)); Nakamoto v. Hilton Waikoloa Vill., No. CAAP-18-0000034, 2019 WL 1747015 (App. Apr. 18, 2019) (SDO) (applying the Blaisdell standard to a dismissal entered pursuant to RCCH Rule 12(q)).

lesser sanction. Chen, 146 Hawai'i at 179–80, 457 P.3d at 818–19. The ICA considered the issue of a plaintiff's deliberate delay in Ryan v. Palmer. 130 Hawai'i 321, 310 P.3d 1022 (App. 2013). In Ryan, the circuit court, pursuant to RCCH 12(q), sua sponte dismissed the plaintiff's tort claim with prejudice on the basis that the plaintiff had not filed a pretrial statement within 8 months after the complaint was filed. Id. at 322, 310 P.3d at 1023. The plaintiff moved to set aside the order of dismissal, arguing that the failure to submit a pretrial statement within the allotted time was an inadvertent error. Id. The circuit court denied the plaintiff's motion, and the plaintiff appealed to the ICA. Id. On appeal, the ICA vacated the order of dismissal and the order denying the plaintiff's motion to set aside, holding that the circuit court had abused its discretion in dismissing the case with prejudice because the record did not show a deliberate attempt by the plaintiff to delay prosecution of the case or actions that constituted contumacious conduct, and the circuit court did not make findings to that effect. Id. at 324, 310 P.3d at 1025. Although the plaintiff had violated RCCH Rule 12(q) by failing to file a pretrial statement, the ICA noted that the plaintiff had prosecuted the case by actively engaging in discovery and had provided a declaration explaining that the failure to submit

38

the pretrial statement was the result of an inadvertent miscommunication between plaintiff's counsel and co-counsel. Id.

Like the plaintiff in Ryan, Erum did not timely file a pretrial statement, and he was not present at a pretrial conference and a settlement conference that he was supposed to attend. Also like the plaintiff in Ryan, Erum filed declarations explaining that his conduct was not deliberate but inadvertent. Erum explained that his failure to timely submit his pretrial statement was the result of his mistakenly placing the wrong date in his personal calendar. In regard to his absence at the settlement conference held on April 18, 2017, Erum stated that he suffered an onset of atrial fibrillation that required him to drive home for treatment. It was on that same day that the court orally informed the parties that the pretrial conference would be held on August 24, 2017. Erum was not present on that date and the court granted Llego's oral motion to dismiss on that basis. In the declaration attached to his motion to set aside, Erum averred that his failure to attend the pretrial conference was not intentional, but instead it was due to his advanced age and memory loss caused by his medication. The veracity of Erum's declarations has not been challenged at any stage of these proceedings, and the only other

procedural violation of ostensible significance on Erum's part was his strategic decision not to submit pretrial documents, which the court apparently did not consider to be a violation.[33] In sum, the record does not show that Erum deliberately delayed the prosecution of his case, and the circuit court did not make any such finding.[34]

---

[33] The dissent concludes that Erum was deploying creative tactics in order to delay proceedings, but it misapprehends the record in making this assertion. First, the dissent concludes that Erum's refusal to sign the settlement agreement documents because it released J's Taxi was a bad faith effort to delay the proceedings as the confirmatory letter actually did inform Erum the agreement would release J's Taxi by stating Erum would "sign a standard Release and Indemnity Agreement and Stipulation For Dismissal With Prejudice Of All Claims And All Parties." Dissent at 9 n.5. Respectfully, J's Taxi is not, and has never been, a party to this litigation, and the dissent does not address Erum's contention that the drafted agreement was also deficient because it did not provide for the vacatur of the sanctions awards. Additionally, the dissent accuses Erum of filing his March 16, 2017 bankruptcy petition, which sought the reinstatement of a bankruptcy proceeding from 2013, in bad faith with the deliberate and sole purpose of delaying these proceedings, but there is no indication in the record of such an intent. Dissent at 16 n.8. Finally, despite the absence of any finding that Erum deliberately delayed providing an explanation for his absence at the April 18, 2017 settlement conference and the record indicating Erum immediately explained his nonattendance because of the sudden onset of the life-threatening atrial fibrillation condition as soon as it was brought to his attention by the motion to dismiss, the dissent accuses Erum of misconduct for not sooner explaining his absence. Dissent at 43.

[34] The dissent contends that our decision "gives license" to untimely filings, not appearing as required, or other delay "tactics." Dissent at 44. This is plainly incorrect. Regarding the issue of deliberate delay, we hold only that the record before us does not contain findings or demonstrate that Erum's procedural violations were <u>deliberate</u>, which our caselaw requires if the violations underlie an order of dismissal with prejudice. <u>Chen</u>, 146 Hawai'i at 179–80, 457 P.3d at 818–19. The dissent selectively identifies particular events that may have delayed proceedings and declares that, taken together, they establish that Erum was deliberately delaying the prosecution of his case. Dissent at 42-43. But the dissent ignores the reasons for these events and the relevant contexts in which they occurred, which is a necessary consideration. Here, the record contains Erum's uncontested declarations establishing that his violations were inadvertent, and the circuit court never made any findings of deliberateness

(continued. . .)

Additionally, the record reflects that, other than his inadvertent procedural violations, Erum has prosecuted his case with reasonable diligence.  Erum participated in discovery, filed motions and responded to motions filed by Llego, engaged in settlement negotiations, attended numerous hearings, moved to schedule trial, filed a pretrial statement, and monitored the court docket.[35]

Therefore, upon "review[ing] the pleadings [and] consider[ing] the entire case record," which was the stated

_____

(. . .continued)

on Erum's part.  All the delays the dissent identifies were either inadvertent or not caused by Erum, and the dissent's assertion that Erum engaged in "creative dilatory tactics" is unsupported by the record.  See supra note 33.

The delays in this case were not so unreasonable or numerous that deliberateness can be conclusively inferred from their length and number alone.  Erum requested and duly received an extension to file his pretrial statement, both parties sought and received one continuance of trial because of ongoing settlement negotiations, and the case was ultimately dismissed only seven months after the initial trial setting.  As such, the length of delay was clearly not so inordinate that a deliberate intent to delay may be inferred.  Cf. Ellis v. Harland Bartholomew and Assocs., 1 Haw. App. 420, 428, 620 P.2d 744, 749 (1980) (dismissal upheld where, although there was no finding of deliberate delay, the record was voluminous with motions to delay and postpone trial and affidavit upon affidavit reciting plaintiff-appellant's unavailability for various proceedings).  We note that the dissent analogizes the length and number of delays in this case to those in Ryan, but the comparison is inapposite because Ryan does not define the parameters for inferring a deliberate intent to delay.  Dissent at 42.  There was no dispute in Ryan that the violation in that case was inadvertent; the challenge was to the initial application of the Blaisdell standard to the dismissal of the plaintiff's claim.  Ryan, 130 Hawai'i at 324, 310 P.3d at 1025.

[35]    The ICA incorrectly stated that Erum refused to voluntarily dismiss his property damage claim.  Erum did not oppose Llego's motion to dismiss his property damage claim and instead sought to continue the hearing on the motion to dismiss until this court ruled on his writ of mandamus, which this court promptly did.

basis for both the circuit court's Dismissal Order and the ICA's SDO, the record does not demonstrate that Erum deliberately delayed prosecution of his case.  The record thus does not support the circuit court's dismissal of Erum's case with prejudice on this basis or the ICA's affirmance.

### 2. Contumacious Conduct

In addition to deliberate delay, when a plaintiff's contumacious conduct results in actual prejudice that cannot be addressed by a lesser sanction, dismissal of an action with prejudice may be justified.  Chen, 146 Hawai'i at 179-80, 457 P.3d at 818-19.  This court has defined contumacious conduct as "willfully stubborn and disobedient conduct."  Blaisdell, 125 Hawai'i at 50, 252 P.3d at 69 (brackets omitted) (quoting Shasteen, 79 Hawai'i at 108, 899 P.2d at 391).  Here, the only conceivable disobedience by Erum was his strategic decision not to submit pretrial documents, which the circuit court did not consider to be a rule violation.  The other instances of noncompliance with court orders or rules of procedure were, as discussed above, the inadvertent product of Erum's advanced age, lapses in memory, and medical condition.  Significantly, there are no findings of fact from the circuit court that Erum engaged in contumacious conduct and that the motion to dismiss was granted on that basis.  See Blaisdell, 125 Hawai'i at 50, 252

P.3d at 69 ("Without evidence that Blaisdell conducted himself in a willfully defiant manner, his actions did not amount to what this court considers 'contumacious conduct.'"); Ryan, 130 Hawai'i at 324, 310 P.3d at 1025 (finding it was an abuse of discretion to dismiss the plaintiff's case with prejudice when the record did not show a deliberate attempt to delay or actions rising to the level of contumacious conduct, and the circuit court did not make any such finding). Rather, Erum's uncontested declarations show that he was making good faith efforts to participate in the proceedings, and the record does not show that he was willfully stubborn and disobedient such that his actions constituted contumacious conduct. Shasteen, 79 Hawai'i at 108, 899 P.2d at 391 ("[T]here is no indication in the record that the Shasteen corporation's failure to secure substitute counsel, to attend the settlement conference with counsel, or to reschedule the conference constituted contumacious conduct . . . ."). Thus, the circuit court's dismissal with prejudice of Erum's case cannot be supported on this basis as well.

### 3. Actual Prejudice

As stated, actual prejudice that cannot be addressed through a lesser sanction is also a necessary precondition to the sound dismissal of a complaint with prejudice. Chen, 146

Hawai'i at 179-80, 457 P.3d at 818-19; see also Blaisdell, 125 Hawai'i at 49, 252 P.3d at 68.  If the party seeking dismissal demonstrates that the plaintiff has deliberately delayed prosecution of the case, that party is entitled to a presumption of prejudice that is rebuttable upon a showing that actual prejudice did not occur.  Blaisdell, 125 Hawai'i at 49, 252 P.3d at 68.  Although it is unnecessary to consider whether Llego suffered actual prejudice in light of our conclusion that there was no deliberate delay or contumacious conduct in this case, we nevertheless address the instances of actual prejudice Llego asserted that he suffered in order to provide guidance as to the proper consideration of this component of the standard for involuntary dismissal of a complaint.

Actual prejudice in this context does not mean mere inconvenience, hardship, or expenditure imposed upon the defendant.  Actual prejudice is "[d]amage or detriment to one's legal rights or claims."  Prejudice, Black's Law Dictionary 1428 (11th ed. 2019).  In Anderson v. Air West, Inc., discussed by this court in Blaisdell, the Ninth Circuit affirmed the federal district court's dismissal with prejudice of a plaintiff's claim for failure to prosecute pursuant to Federal Rules of Civil

Procedure (FRCP) Rule 41(b) (1968).[36]  542 F.2d 522, 523-34 (9th Cir. 1976).  The district court in Anderson found that the plaintiff's failure to serve several of the named defendants until approximately one year after the complaint had been filed caused actual prejudice because the death of two of the defendants six months after process was served prevented them from contributing to the preparation of the defense.  Id. at 525.  "Prejudice is clear" the court stated, "because if service had been made promptly they would have been able to participate in the first 18 months of defense planning."  Id.

This court discussed the actual prejudice necessary to support a dismissal with prejudice in Bagalay v. Lahaina Restoration Foundation, 60 Haw. 125, 138, 588 P.2d 416, 425 (1978).  In Bagalay, the circuit court, pursuant to RCCH Rule 12(f), dismissed the plaintiff's claim with prejudice because of the plaintiff's repeated failures to submit a proper statement of readiness.  Id. at 137-38, 588 P.2d at 424-25.  On appeal we

---

[36]   FRCP Rule 41(b) (2007), which has not been amended since Anderson, states as follows:

> Involuntary Dismissal; Effect.  If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19-- operates as an adjudication on the merits.

45

reversed the court's dismissal, in part because the record did not indicate that the delay caused the defendants to suffer actual prejudice. Id. at 142, 588 P.2d at 427. Our decision explained that although delay generally has a detrimental effect on the preservation of evidence and the maintenance of communication with witnesses, all parties in the case were able to participate fully in the discovery proceedings and take depositions of potential witnesses. Id. at 138, 588 P.2d at 425. We further observed that there was no indication in the record that "circumstances have changed which have impaired appellees' ability to adequately present their defense." Id. Accordingly, our precedent establishes that the actual prejudice a defendant must suffer is actual damage or detriment to the presentation of the defense.

In his motions to dismiss before the circuit court, Llego asserted that he suffered actual prejudice because the delays in this case caused both him and his counsel to expend additional time and resources. However, there were no findings or other evidence in the record indicating that any of the asserted additional costs imposed on Llego by the delays in this case affected Llego's ability to present his defense. The incurring of additional fees and costs that have no effect on the defendant's ability to present a defense is not legal

46

prejudice and cannot alone support a finding of actual prejudice under Blaisdell. Thus, the record does not show that any of the delays in this case caused Llego to suffer actual prejudice, and there were no findings to that effect.

### 4. Inadequacy of Lesser Sanctions

In cases where a plaintiff's deliberate delay or contumacious conduct causes actual prejudice, the circuit court is also required to consider and explain why a lesser sanction than dismissal with prejudice could not adequately address the actual prejudice caused by the plaintiff's conduct. Chen, 146 Hawai'i at 179-80, 457 P.3d at 818-19. In its Dismissal Order, the circuit court did not address the possibility of less severe sanctions or state any reasons why lesser sanctions could not address any prejudice Llego may have suffered. As an explanation for its ruling, the Dismissal Order only states that the court reviewed the pleadings, considered the entire case record, and heard oral argument.[37] As stated, "[i]nvoluntary dismissals of a complaint with prejudice are not favored, and should be ordered only in extreme circumstances[.]" Blaisdell, at 49, 252 P.3d at 68. The circuit court in this case should

_____

[37] The "argument" was held at an ex parte hearing at which only defense counsel was present.

47

have expressly considered the lesser sanctions available to it
and explained why the circumstances were so extreme that a
lesser sanction could not adequately address any actual
prejudice Llego suffered.[38]  Id. at 50-51, 252 P.3d at 69-70.
Accordingly, the circuit court abused its discretion in granting
Llego's oral motion to dismiss without a determination that Erum
had engaged in deliberate delay or contumacious conduct that
caused Llego actual prejudice, and the court erred by failing to
explain the inadequacy of lesser sanctions.[39]  Consequently, the
ICA erroneously affirmed the circuit court's Dismissal Order.

### 5. The Necessity of Making Relevant Findings

We next consider whether it is appropriate for the

_____

[38]     In order to address any actual prejudice caused by a plaintiff's
delay, the lesser sanction should be designed to encourage diligent
prosecution of the case and, as necessary, compliance with the court's
orders.  Here, because Erum's medical condition and advanced age led to delay
in the prosecution of the case, the court could have considered, for example,
permitting Erum to appear at the pretrial conference by phone or video,
requiring Erum to have a relative or a friend to assist him in attending
court proceedings, providing Erum with information as to entities that
possibly could provide him the assistance of legal counsel, or utilizing
other means to provide reminder notices to Erum as to court dates.

[39]     The dissent concludes that dismissal was obviously the only
sanction available to the court because Erum had been sanctioned five times
with judgments entered in the amount of $10,946.77, and he had not satisfied
these obligations prior to Llego's oral motion to dismiss.  Dissent at 19
n.10, 44-45.  Although the dissent asserts that Erum was willfully refusing
to pay the sanctions, there is nothing in the record to indicate that he even
had the ability to pay the sanctions.  Erum's request to proceed in forma
pauperis and self-representation indicate that an inability to pay is the
more likely explanation.  See supra note 12.  Additionally, as discussed
infra, in imposing monetary sanctions "Hawai'i courts should consider the
effect of sanctions upon a party's resources in conjunction with a decision
to levy sanctions."  Kaina v. Gellman, 119 Hawai'i 324, 332-33, 197 P.3d 776,
784-85 (App. 2008).

circuit court, as it did in this case, to dismiss a case with prejudice without making any underlying findings of fact as to deliberate delay or contumacious conduct, actual prejudice, and the inadequacy of lesser sanctions.  While this court has stated that the record must clearly support an order of dismissal, we have not expressly required the making of relevant findings.  See Blaisdell, 125 Hawai'i at 49, 252 P.3d at 68 ("If the record does not show the requisite facts, an order of dismissal cannot be affirmed . . . ." (emphasis added)); see also Shasteen, 79 Hawai'i at 107, 899 P.2d at 390 ("[D]ismissal of a complaint is such a severe sanction, that it should be used only in extreme circumstances where there is clear record of delay or contumacious conduct[.]").

However, with regard to a court's consideration of lesser sanctions prior to the dismissal of a case, this court has made the rendering of findings a near-requirement.  In Blaisdell, we stated that, "the careful exercise of judicial discretion requires that a [trial] court consider less severe sanctions and explain, where not obvious, their inadequacy for promoting the interests of justice."  125 Hawai'i at 49, 252 P.3d at 68 (emphasis added and omitted) (alteration in original) (quoting Schilling v. Walworth Cty. Park & Planning Comm'n, 805 F.2d 272, 275 (7th Cir. 1986)).  Requiring a court to consider

49

and explain the inadequacy of lesser sanctions underscores this court's frequent admonition that dismissal with prejudice "is such a severe sanction that it should seldom be used." Id. And, in the rare situation when a dismissal may be appropriate, a trial court must first carefully consider lesser sanctions and explain why they are inadequate to address the circumstances of that case. See Enos v. Pac. Transfer & Warehouse, Inc., 79 Hawai'i 452, 458, 903 P.2d 1273, 1279 (1995) ("[S]anctions are not to be assessed without full and fair consideration by the court." (quoting Simmerman v. Corino, 27 F.3d 58, 64 (3d Cir. 1994))). This is because "a dismissal with prejudice is inconsistent with this court's 'policy of affording litigants the opportunity to have their cases heard on the merits, where possible.'" Blaisdell, 125 Hawai'i at 51, 252 P.3d at 70.

It is noteworthy that when a court explains why lesser sanctions will be insufficient to address the plaintiff's errant conduct, it will necessarily entail describing the underlying conduct, the measures that were previously taken by the court to address the conduct, and the measures' lack of success in remedying the situation. In other words, the required explanation is nearly the functional equivalent of requiring a court to make findings.

Additionally, this court has recommended that orders imposing sanctions in other contexts "set forth findings that describe, with reasonable specificity, the perceived misconduct (such as harassment or bad faith conduct), as well as the appropriate sanctioning authority (e.g., HRCP Rule 11 or the court's inherent power)." Bank of Hawaii v. Kunimoto, 91 Hawai'i 372, 390, 984 P.2d 1198, 1216 (1999). When an order imposing sanctions does not follow this recommendation, the appellate court is compelled to review the entire record for an abuse of discretion. Fujimoto v. Au, 95 Hawai'i 116, 153, 19 P.3d 699, 736 (2001). However, we have stated that specific findings must be made in cases when it is warranted. See, e.g., Tagupa v. VIPdesk, 135 Hawai'i 468, 479, 353 P.3d 1010, 1021 (2015) (stating that prior to a statutory award of attorneys' fees for a frivolous claim, the court must make a specific finding that all or a portion of the claims made by a party are frivolous); Fujimoto, 95 Hawai'i at 153, 19 P.3d at 736 ("Absent a particularized finding of bad faith, the circuit court abused its discretion in sanctioning the plaintiffs."); Kunimoto, 91 Hawai'i at 389, 984 P.2d at 1215 ("It is well settled that a court may not invoke its inherent powers to sanction an attorney without a specific finding of bad faith."); Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 258, 948 P.2d 1055, 1099

(1997) (affirming the circuit court's award of attorneys' fees because the court issued findings describing defendant's discovery violations in detail).

We have also stated that specific findings that describe the perceived misconduct serve multiple important purposes. Enos, 79 Hawai'i at 459, 903 P.2d at 1280. First, findings permit a more meaningful and efficient appellate review as to whether "the trial court exercised its discretion in a reasoned and principled fashion." Id. Second, findings assure the litigants, as well as the court, "that the decision was the product of thoughtful deliberation." Id. Finally, findings clearly identify and explain to the sanctioned person the conduct underlying the sanction.

The importance of these purposes is heightened in the context of a dismissal with prejudice because the sanction is so severe. It is thus particularly critical that the trial court's decision reflects informed and reasoned discretion, and that appellate review of such a dismissal be efficacious and meaningful. Fujimoto, 95 Hawai'i at 153, 19 P.3d at 736 ("The circuit court's finding of a bad faith filing--as expressed in its oral ruling from the bench . . . lacks specificity and, based on our review, lacks support in the record."). Further, we note that the current standard requiring the appellate court,

52

in the absence of specific findings, to review the entire record for abuse of discretion and only requiring an explanation of the inadequacy of lesser sanctions when the inadequacy is "not obvious" impairs the efficacy of appellate review and is subject to varied application by the trial courts.

These considerations lead us to conclude that whenever a case is involuntarily dismissed with prejudice, the trial court must state essential findings on the record or make written findings as to deliberate delay or contumacious conduct and actual prejudice and explain why a lesser sanction than dismissal with prejudice is insufficient to serve the interests of justice.[40]

---

[40] Minimal oral or written findings will suffice when the cited rule provides the precise conduct in question that warrants dismissal and the order of dismissal or rule specifically provides the party with the ability to seek reinstatement of the case. For example, RCCH Rule 12(q) allows the court to dismiss an action sua sponte with written notice to the parties if a pretrial statement has not been filed within 8 months after the complaint has been filed or if a trial setting status conference has not been scheduled as required by RCCH Rule 12(c). "Such dismissal may be set aside and the action reinstated by order of the court for good cause shown upon motion duly filed not later than ten (10) days from the date of the order of dismissal." RCCH Rule 12(q). If, after the entry of dismissal, the sanctioned party seeks reinstatement "for good cause shown," it will be necessary for the court to more explicitly consider whether there was deliberate delay or contumacious conduct, and whether there is actual prejudice that cannot be addressed through lesser sanctions. See RCCH Rule 12(q); Ryan, 130 Hawai'i at 324, 310 P.3d at 1025 (vacating the circuit court's denial of a motion to set aside a dismissal entered under RCCH 12(q) because there was no evidence that plaintiff's failure to submit a pretrial statement was deliberate or contumacious, and nothing in the record showed prejudice to defendant); Chen, 146 Hawai'i at 179-80, 457 P.3d at 818-19 (holding that an HRCP Rule 55(c) motion to set aside entry of default is to be evaluated based on whether there has been a showing of good cause, and good cause exists if there was no deliberate delay or contumacious conduct causing actual prejudice that cannot

(continued. . .)

53

Accordingly, we hold that after the filing date of the judgment on appeal in this case, the circuit courts must enter findings setting forth the requisite facts underlying an involuntary dismissal of a case with prejudice based on procedural violations of court rules. Cf. State v. Hussein, 122 Hawai'i 495, 510, 229 P.3d 313, 328 (2010) (holding that, after the filing date of the judgment, circuit courts must state on the record at the time of sentencing the reasons for imposing a consecutive sentence).

## C. The Circuit Court Should Have Considered Erum's Emergency Motion to Reschedule Trial.

The Hawai'i Rules of Civil Procedure "do not require technical exactness or draw refined inferences against the pleader; rather, they require a determined effort to understand what the pleader is attempting to set forth and to construe the pleading in his favor." Giuliani v. Chuck, 1 Haw. App. 379, 385-86, 620 P.2d 733, 737-38 (1980); see also Dupree v. Hiraga,

---

(. . .continued)

be addressed through lesser sanctions); see also Blaisdell, 125 Hawai'i at 49, 252 P.3d at 68 (noting that "the circuit court had authority to dismiss Blaisdell's complaint, subject to the ten day reinstatement motion and a finding of good cause" under HRCP Rule 41(b)(2)). The dissent asserts this distinction for rules and orders of dismissal that provide an ability to seek reinstatement is confusing, Dissent at 46, but this is merely an application of the practice this court and the ICA have followed when resolving the appeal of a dismissal with prejudice under a rule that permits reinstatement. See Chen, 146 Hawai'i at 179-80, 457 P.3d at 818-19; Ryan, 130 Hawai'i at 324, 310 P.3d at 1025.

121 Hawai'i 297, 314, 219 P.3d 1084, 1101 (2009) ("[P]leadings . . . are to be construed liberally rather than technically."). This is particularly true when the court is dealing with pro se litigants, and it is well established that the pleadings of pro se litigants should be liberally interpreted in order to promote access to justice. Waltrip v. TS Enters., Inc., 140 Hawai'i 226, 239-41, 398 P.3d 815, 828-30 (2016) (stating that courts and agencies have discretion to liberally construe and recharacterize the filings of pro se litigants in order to promote access to justice).

In furtherance of promoting access to justice, we have stated that "pro se filings, even when 'misbranded,' should be reasonably construed in a manner that 'results in identifying a route to relief, not in rendering relief impossible.'"[41] Id. at 241, 398 P.3d at 830 (quoting Mata v. Lynch, 576 U.S. 143, 151 (2015)). Thus, a court abuses its discretion if it construes a filing by a pro se litigant in a manner that prevents the

---

[41] Although Erum has been pro se throughout these proceedings, the dissent argues that Erum has no right to have his filings liberally construed because he is "a litigation-savvy retired attorney." Dissent at 53. The record indicates that Erum became licensed to practice law in California in 1968 after passing the bar, but that he never attended law school and does not possess a law degree. Erum practiced law as a sole practitioner for three and a half years before returning to Hawai'i to care for his parents. After returning in 1972, there is no indication he has practiced law at any time in the past forty-eight years. The dissent's characterization of Erum as a "litigation-savvy retired attorney" does not present an accurate reflection of his background.

litigant from proceeding when a reasonable, liberal construction of the document would permit the litigant to do so.[42]  See id. at 239, 398 P.3d at 828.

In this case, after the court had granted Llego's oral motion to dismiss and taken the trial off calendar, Erum filed an emergency motion requesting a continuance so that the court would have time to consider Llego's motion to dismiss and Erum would have time to respond.  In his emergency motion, which Erum apparently prepared after he became aware that Llego had "presented to the Court for its approval and signature a proposed order to dismiss this action," Erum contended that Llego's motion to dismiss should have been made in writing and that he should be allowed sufficient time to respond.  Although the motion was framed as a motion to continue, the court should have made a determined effort to understand what Erum was attempting to set forth and to liberally construe the pleading

_____

[42]    The dissent contends that we are broadening this court's holding in Waltrip.  Dissent at 51-52.  A close reading of the case indicates otherwise.  In Waltrip, this court concluded that Hawai'i courts and agencies have discretion to reasonably construe the filings of pro se litigants in order to promote access to justice.  Waltrip, 140 Hawai'i at 239-41, 398 P.3d at 828-30.  We determined that the agency in that case had construed a filing by the pro se litigant in a manner that prevented the litigant from proceeding, even though a reasonable, liberal construction of the filing would have permitted the litigant to do so.  Id. at 241, 398 P.3d at 830.  We then held that the agency's failure to recharacterize the filing required remanding the case to the agency so that it could properly dispose of the pro se litigant's filing in a way that facilitated the litigant's access to relief.  Id.

in a manner that did not foreclose the possibility of relief.[43]

Waltrip, 140 Hawaiʻi at 241, 398 P.3d at 830.  This obligation

was underscored by the fact that the court's denial of Erum's

emergency motion extinguished the possibility of recovery on

Erum's claim.  See Villaver v. Sylva, 145 Hawaiʻi 29, 36, 445

P.3d 701, 708 (2019) (finding that a pro se litigant's request

for an interpreter should have been interpreted liberally as a

request to withdraw his admissions and file a late response,

particularly since a more restrictive interpretation would have

extinguished his only opportunity to recover on his negligence

claim).  Had the circuit court done so in this case, the court

might have considered the merits of the emergency motion, which

pointed to both procedural and substantive deficiencies

underlying the granting of the dismissal motion.  Instead, the

court denied Erum's motion without a hearing and failed to

construe Erum's emergency motion in a reasonable, liberal

---

[43]    The dissent posits that the circuit court in fact did consider Erum's emergency motion, and there was no reasonable construction of the motion that would permit Erum to proceed.  Dissent at 50.  Under this hypothesis, the circuit court recognized the writing requirement of HRCP Rule 7(b)(1), the due process implications of granting Llego's motion ex parte, see supra note 20, and its failure to comply with applicable law, and yet still denied Erum's emergency motion and upheld the granting of Llego's oral motion to dismiss.  Manifestly, such a ruling would have been an abuse of discretion because it would have been based on an incorrect application of the law.  Gap v. Puna Geothermal Venture, 106 Hawaiʻi 325, 331, 104 P.3d 912, 918 (2004) ("The trial court abuses its discretion if it bases its ruling on an erroneous view of the law[.]").

manner, which would have allowed reinstatement of the case and permitted Erum to proceed on his claim.[44]  Waltrip, 140 Hawai'i at 241, 398 P.3d at 830.

### D.    The Circuit Court Awarded Monetary Sanctions Without Citing the Authority Underlying the Sanctions or Making Findings of Bad Faith.[45]

In affirming the Order of Dismissal in this case, the ICA pointed to the fact that the circuit court had "awarded monetary sanctions against Erum five times" prior to dismissing the case.  By citing the monetary sanction orders, the ICA indicated that the Dismissal Order was justified at least in part because of the previous sanctions the circuit court had imposed on Erum.  In light of the ICA's reliance on the monetary sanction orders as support for its affirmance, and the possibility of their future consideration on remand, it is appropriate to review our precedent in this area.

It is settled law that the trial courts of this state are empowered in appropriate circumstances to impose monetary sanctions on a party during the course of litigation.  Kunimoto,

---

[44]    In view of our disposition of other issues in this case, we do not address whether the court's failure to construe Erum's Emergency Motion liberally would also warrant vacating the Dismissal Order.

[45]    Because this case is being remanded to the circuit court for further proceedings, we provide guidance to the court with regard to the monetary sanctions that have been imposed.

91 Hawai'i at 387, 984 P.2d at 1213.  Such sanctions may be imposed under the authority of either a statute, a rule, or the court's own inherent power.  Id.  The sanctioning order should set forth findings that describe the perceived misconduct with reasonable specificity, and it must state the sanctioning authority.  Trs. of Estate of Bishop v. Au, No. SCWC-16-0000235, 2020 WL 1150157 (Haw. March 10, 2020); Kaina v. Gellman, 119 Hawai'i 324, 331, 197 P.3d 776, 783 (App. 2008) ("[T]he court's order must inform the party of the authority pursuant to which he or she is to be sanctioned." (citing Fujimoto, 95 Hawai'i at 153, 19 P.3d at 736)).  When the sanction order does not state the authority pursuant to which the sanction is imposed, the appellate court's ability to review the sanction is hindered.  This is because the appellate court is forced to speculate as to the authority for the monetary sanction and consider whether the sanction's imposition was proper under any potentially applicable rules or statutes, or even inherent authority, to determine whether the sanction should be affirmed.  See Enos, 79 Hawai'i at 457-60, 903 P.2d at 1278-81 (considering whether the circuit court's imposition of a sanction should be affirmed under its inherent authority after finding it was not proper under HRCP Rule 11, which was the stated basis); Wong v. Frank, 9 Haw. App. 249, 261, 833 P.2d 85, 93 (1992) (vacating and

remanding sanction order where circuit court did not specify the authority for sanction after determining that regardless of whether the sanction was imposed under the circuit court rules or the court's inherent power, the sanction violated appellant's rights to notice and hearing).

In this case, the circuit court imposed five monetary sanctions against Erum for the costs and attorneys' fees incurred by Llego at various points during the course of litigation. None of the sanction orders recited the legal authority for the imposition of the sanction. While a trial court has the inherent power to curb abuses and promote a fair process, including the power to impose sanctions in the form of attorneys' fees for abusive litigation practices, the court must exercise its inherent power to impose sanctions "with restraint and discretion." Kunimoto, 91 Hawai'i at 387, 984 P.2d at 1213. In recognition of the need for such restraint, this court requires a particularized showing of bad faith as a necessary condition precedent to any sanction of attorneys' fees under the court's inherent powers. Id. at 389, 984 P.2d at 1215; Enos, 79 Hawai'i at 458-59, 903 P.2d at 1279-80. Additionally, the finding of bad faith must be supported by clear and convincing evidence. Kunimoto, 91 Hawai'i at 390-93, 984 P.2d at 1216-19 (applying clear and convincing evidence standard to imposition

of sanctions based on finding of bad faith); LaPeter v. LaPeter, 144 Hawai'i 295, 309, 439 P.3d 247, 261 (App. 2019) ("[T]he court's finding of bad faith must be based on clear and convincing evidence.").

Here, none of the sanction orders contain a finding that Erum acted in bad faith.  The only reference to Erum's good or bad faith was the court's finding that Erum's "actions in the settlement negotiations were not made in good faith."  Our cases, however, have consistently held that the circuit court must find bad faith before imposing an award of attorneys' fees pursuant to the court's inherent authority.  See, e.g., Gap v. Puna Geothermal Venture, 106 Hawai'i 325, 334, 104 P.3d 912, 921 (2004).  A lack of good faith is not tantamount to acting in bad faith, and the court's conclusory statement in this case is unsupported by any findings as to the basis of its conclusion. Cf. Kunimoto, 91 Hawai'i at 390, 984 P.2d at 1216 ("[T]hese findings are sufficient to enable this court to infer a specific finding of bad faith by the circuit court.").  In addition, there is no basis to conclude that this sanction is supported by clear and convincing evidence.

Further, none of the sanction orders make any findings related to the reasonableness of Llego's fees and costs.  The record does not disclose whether the fees and costs awarded were

61

reasonable under the circumstances.[46]  Manifestly, it would be inappropriate for the circuit court to award attorneys' fees and costs that were unreasonably incurred under its inherent authority.  Cf. HRCP Rule 16(f) (allowing the court to sanction a party for "the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust" (emphasis added)); RCCH Rule 12.1(a)(6)(ii) (permitting the court to order a party to pay the opposing party's reasonable expenses and attorneys' fees).

In determining reasonableness as to the assessment of fees, "Hawaiʻi courts should consider the effect of sanctions upon a party's resources in conjunction with a decision to levy

_____

[46]  For example, the record does not show that, before filing his first motion to dismiss, Llego made an effort to informally resolve Erum's failure to timely file a pretrial statement, as the Guidelines of Professional Courtesy and Civility for Hawaiʻi Lawyers recommend.  See Guidelines of Professional Courtesy and Civility for Hawaiʻi Lawyers Rule 8(a) (2018) ("Motions should be filed sparingly, only in good faith and when the issue cannot be otherwise resolved.  Specifically, a lawyer who manifests professional courtesy and civility . . . [e]ngages in more than a mere pro forma effort to resolve the issue before filing a motion[.]" (emphases added)).  Erum promptly filed his pretrial statement just nine days after Llego's motion to dismiss was filed, and he stated in a declaration attached to his opposition to Llego's motion that he only became aware of his error after Llego's motion to dismiss was filed.  From the record, it appears that the costs and fees incurred in making the first motion to dismiss, which defense counsel averred to be in the total amount of $3,280.19, may have been avoided if an effort had been made to resolve the issue without resorting to the filing of a motion to dismiss.

sanctions[.]" Kaina, 119 Hawai'i at 332-33, 197 P.3d at 784-85.

In Kaina, a wrongful death case, the trial court sanctioned the

plaintiff for the defendants' attorneys' fees and costs incurred

in defending a renewed motion for consolidation.[47] Id. at 327-

28, 197 P.3d at 779-80. As in this case, the sanction order did

not state the authority under which the sanction was imposed.

Id. at 328-29, 197 P.3d at 780-81. On appeal, the ICA reversed

the sanction order after concluding that the record did not show

that Kaina acted in bad faith in making the motion and that an

imposition of sanctions against Kaina under HRCP Rule 11 would

have been improper. Id. at 330-33, 197 P.3d at 782-85.

Additionally, the ICA noted that the circuit court had given no

consideration to the effect of the sanction on Kaina's

resources. Id. at 332, 197 P.3d at 784. Kaina's uncontested

declaration indicated that she was totally disabled, the sole

provider for her own financial support, and lived on social

security disability and a small pension. Id. The ICA stated

that although a party's resources, or lack thereof, is not a

complete bar to the award of sanctions when sanctions are

warranted, the court should take into account the effect of

---

[47] The circuit court had previously bifurcated Kaina's claims against the defendants into two separate trials. Kaina, 119 Hawai'i at 326, 197 P.3d at 778.

sanctions upon a party's resources when considering the imposition of sanctions.  Id. at 332-34, 197 P.3d at 784-85.

In this case, the record does not provide any indication that the circuit court considered Erum's resources or what effect the imposition of sanctions would have upon him if monetary sanctions were awarded.  Although it is unclear from the record what facts were before the court as to Erum's resources at the time any of the sanctions were imposed, Erum was pro se throughout the proceedings, and at minimum the court was aware that Erum was involved in bankruptcy proceedings by March of 2017.  In any event, at this time there is "other evidence pertinent to the issue" in the record,[48] and the circuit court may properly consider Erum's resources on remand.  Kaina, 119 Hawai'i at 333, 197 P.3d at 776.

In light of our disposition vacating the Dismissal Order and remanding this case to the circuit court, and because the deficiencies in the record seriously impede our ability to review the sanctions awarded in this case, we vacate the monetary sanctions awarded against Erum.[49]  See Fuqua Homes, Inc.

---

[48]    See supra note 12.

[49]    Although this court has in the past considered potentially applicable authority for a sanction imposed by a trial court and then determined whether the authority could support the sanction's affirmance, we conclude that it is unnecessary to engage in conjectural analysis because the

(continued. . .)

v. Beattie, 388 F.3d 618, 623 (8th Cir. 2004) (vacating and remanding the district court's sanctioning order because the court's failure to identify the sanctioning authority made it "impossible to review the district court's order"). On remand the circuit court may reconsider the sanctions awarded and, if warranted, enter appropriate sanction orders that comply with the requirements outlined in this opinion.

## IV. CONCLUSION

Accordingly, we vacate the ICA's Judgment on Appeal entered on June 28, 2019, the circuit court judgment, the Dismissal Order, and the monetary sanction orders. The case is

---

(. . .continued)

Dismissal Order is being vacated and the case is being remanded to the circuit court. Cf. Enos, 79 Hawai'i at 457-60, 903 P.2d at 1278-81. Additionally, we note that some federal appellate courts, when presented with the appeal of sanctioning orders that do not state the authority pursuant to which the sanction was imposed, have rejected conjectural analysis and instead automatically vacate the sanction and remand the case to the district court "for specification of the authority on which the [district] court relied for imposing sanction and the particular conduct meriting such sanctions." Coltrade Int'l, Inc. v. United States, 973 F.2d 128, 132 (2d Cir. 1992) (vacating and remanding a district court's order imposing sanctions because although the record made it "abundantly clear" sanctions were justified, the district court failed to identify the sanctioning authority); see also Beattie, 388 F.3d at 623.

remanded to the circuit court for proceedings consistent with

this opinion.

Theodorico Erum, Jr.,                    /s/ Sabrina S. McKenna
petitioner, pro se
                                         /s/ Richard W. Pollack
Lisa Strandtman, Jason M. Tani,
Shawn M. Nakoa,                          /s/ Michael D. Wilson
for respondent

